PICCARRETA DAVIS KEENAN FIDEL PC
2 East Congress Street, Suite 1000
Tucson, AZ  85701
(520) 622-6900
Michael L. Piccarreta
State Bar No. 003962
Email: mlp@pd-law.com
Attorney for Defendant Andrew Padilla

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| United States of America,<br><br>Plaintiff,<br><br>vs.<br><br>6.  Andrew Padilla,<br>     (Counts 1-51)<br><br>Defendant. | NO. CR-18-00422-06-PHX-SPL (BSB)<br><br>MOTION FOR ITEMIZATION OF *BRADY*/*GIGLIO* MATERIAL<br><br>(First Request)<br>(Oral Argument Requested) |
|---|---|

Defendant Andrew Padilla, by and through his undersigned attorney, hereby moves this Court for an order requiring the government to itemize documents and other materials pursuant to the principles set forth in *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and their progeny. This motion is based on the legal reasoning and authorities set forth in the attached Memorandum of Points and Authorities.

It is expected that excludable delay under 18 U.S.C. § 3161(h)(1)(D) may occur as a result of this motion or an order based thereon, as explained more fully below.

RESPECTFULLY SUBMITTED this 20th day of August, 2018.

PICCARRETA DAVIS KEENAN FIDEL PC

By: ___/s/___   Michael L. Piccarreta_____
        Michael L. Piccarreta
        Attorney for Andrew Padilla

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

**BACKGROUND**

Defendant Andrew Padilla and his co-defendants stand charged with various offenses set forth in the government's 100-count superseding indictment. The indictment alleges conspiracy, Travel Act violations premised upon underlying state law misdemeanor prostitution offenses, conspiracy to commit money laundering, and money laundering. The charges arise out of the operations of the website Backpage.com ("Backpage").

The government began its investigation of Backpage over five years ago and instituted grand jury proceedings in the Western District of Washington. Prosecutors in this district subsumed the investigation after the district court in Washington quashed grand jury subpoenas there, rejecting the government's novel theory of prosecution -- the same novel theory underpinning the current superseding indictment obtained on July 25, 2018. Over the course of its investigations, the government has amassed voluminous information and evidence. On May 29, 2018, the government disclosed to defendants' counsel two external hard drives comprising approximately three terabytes of information. (Correspondence from government counsel to defense counsel, May 24, 2018, attached hereto as Exhibit A).

The government's voluminous disclosure is largely useless to the defendants. The

government has advised that the disclosure has been provided in this form for use in the Relativity data review platform. (Email correspondence between government counsel and defense counsel, attached hereto as Exhibit B). This poses additional difficulties for the defendants because, among defendants' counsel, only the law firm of Davis Wright Tremaine, LLP ("DWT") has the Relativity platform. The government, recognizing the importance of DWT to the defendants, has engaged in affirmative steps to remove DWT from the case, which would not only deprive defendants of DWT's expertise and raise serious Sixth Amendment issues, it would eliminate what access and hosting capabilities they currently have for use of Relativity.

In any event, the sheer size of the government's disclosure likely would require use of a litigation support vendor for data hosting and access, the costs of which would be upwards of $800,000.[1] Moreover, having to review all of the documents and data provided by the government would require several million dollars more in costs and fees. These costs must be considered against the backdrop of the government's massive pre-conviction seizure of key defendants' assets, starving them of resources to fund defense of this case generally, much less money to fund a massive document review effort.

---

[1] DWT does not have sufficient infrastructure to host and support Relativity databases as large as those for the Backpage-related materials. Counsel have learned from a litigation support vendor that setting up and hosting a Relativity database for the government's production would have an initial cost of approximately five cents per page to load the materials into the platform (approximately $450,000.00 for nine million pages), plus a monthly fee of approximately $20,000.00 - $30,000.00 per month to host the data, and fees of $95.00 per month per user to access the data. Using the lower end of these estimates, and with only one user per defendant, the cost of setting up and using the Relativity platform would be $791,615.00 by the time of the trial date.

Defendants have sought to address these problems with the government, and, after meeting and conferring, the parties have reached agreement regarding certain items of government disclosure. For example, the government has produced some documents it believes support the allegations in the indictment, and some others it views as "hot" documents (yet reserving rights to supplement later, so that defendants do not know how complete or incomplete these disclosures are). The government has also agreed to provide the ads that were placed on Backpage.com that relate to individuals identified as alleged "victims" in the indictment (although this has not yet happened). However, the government has indicated that it will not identify or itemize any *Brady* materials within its voluminous disclosure. (Exhibit B). Under circumstances such as these, courts have repeatedly ordered additional disclosure pursuant to the principles set forth in *Brady* and its progeny, and have required the government to specifically identify materials within voluminous disclosures in order to fulfil its *Brady* obligations.

## ARGUMENT

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that the prosecution must turn over to the defense any information within its possession material to either the defendant's innocence or his punishment. In *Giglio v. United States*, 405 U.S. 150 (1972), the Supreme Court made clear that this duty to disclose extends to any information that may tend to impeach a witness or discredit the witness' testimony. This duty to disclose extends to any information within the possession of any attorney or agent of the prosecutor's office, and any known information within the possession and/or control of cooperating law enforcement personnel. *See, e.g., United States v. Brooks*, 966 F.2d 1500, 1502-03 (D. C.

4

Cir. 1992) (collecting cases); *Carriger v. Stewart*, 132 F.3d 463, 479-80 (9th Cir. 1997) ("the prosecution has a duty to learn of any exculpatory evidence known to others acting on the government's behalf").

In cases involving voluminous and unwieldy government disclosures, courts have required the government to specifically identify the *Brady* materials within the disclosures. For example, in *United States v. Hsia*, 24 F.Supp.2d 14, 29 (D. D. C. 1998), the court specifically noted that "open-file discovery does not relieve the government of its *Brady* obligations. The government cannot meet its *Brady* obligations by providing [the defendant] with access to 600,000 documents and then claiming that she should have been able to find the exculpatory information in the haystack." Rather, "it is the government's responsibility in the first instance to determine whether information in its possession is *Brady* material." *Id*. at 30.

The concerns expressed in *Hsia* -- a traditional "paper" case -- are obviously exacerbated in cases involving the government's disclosure of voluminous electronically stored information. In *United States v. Salyer*, 2010 WL 3036444 (E. D. Cal. 2010), the court recognized these concerns and rejected the government's argument that it satisfied its *Brady* obligations by "simply disclosing everything" to the defendant. *Id*. at *2. The court ordered the government to specifically identify the *Brady*/*Giglio* materials in its voluminous disclosure to the defendant under circumstances similar to the present case where "[o]ver the course of approximately five years before indictment, the government collected, i.e., subpoenaed, acquired through warrant, or other means, a massive amount of documentary information … consist[-ing] of multiple gigabytes, pages numbering into the millions." *Id*.

at *3.

The court, "as a matter of case management (and fairness)," ordered the government to specifically identify the *Brady*/*Giglio* documents contained in its voluminous discovery production. *Id*. at *2.[2]

> In light of the above, and to return to the real problem here, it bears repetition to emphasize that the ultimate issue is whether there is "disclosure" in the letter *and* spirit of *Brady*/*Giglio* simply by turning over a mountain of "everything" acquired over half a decade, and telling defense counsel nothing about where exculpatory/impeaching information can be found….Or, as the undersigned put it in the initial order: "[A]t some point (long since passed in this case) a duty to disclose may be unfulfilled by disclosing too much; at some point, "disclosure," in order to be meaningful, requires "identification" as well.

*Id*. at *6 (emphasis in original).

The court explained in detail why the government could not satisfy its *Brady* obligations under such circumstances by simply disclosing everything without conducting an independent *Brady*/*Giglio* review and identifying specific documents for the defendant. The court noted that, under the *Brady/Giglio* guidelines set forth in the Department of Justice's own memorandum, and under well-established case law, "the *prosecution* has the duty to *affirmatively* scour those records of the agencies considered the 'government' for purposes of the criminal case in order to determine and acquire those materials which would

---

[2] The court acknowledged that "[t]he case law is established, as a *general* rule, that if *Brady*/*Giglio* were disclosed to the defense, the fact that the government did not identify it as such will not cause the conviction to be reversed." *Id*. (emphasis in original). *See, e.g., Rhoades v. Henry*, 638 F.3d 1027 (9th Cir. 2011); *United States v. Warshak*, 631 F.3d 266 (6th Cir. 2010). However, the court held "that case law does not preclude the undersigned as a matter of case management (and fairness) in ordering the identification to be done." 2010 WL 3036444 at *2.

be considered *Brady* exculpatory and *Giglio* impeaching." *Id*. at *3 (emphasis in original). The court further noted that the DOJ guidelines "command that an *actual review* of the materials acquired during investigation of a criminal case for the purpose of disclosing *Brady/Giglio* materials." *Id.* (emphasis in original). "Tellingly, nowhere in the memorandum does it even suggest that in lieu of affirmatively looking for *Brady/Giglio* the prosecutor may determine not to look at all and simply disclose the entire discovery file." *Id*. Finally, the court rejected the government's argument "that it performs its *Brady/Giglio* duties as set forth above, by *not* looking for the required information as the cases seem to direct, but by just disclosing *everything*." *Id*. at *4 (emphasis in original).[3]

It must also be remembered that the government has repeatedly emphasized that it is devoting more resources to the present prosecution than to virtually any other prosecution in this district. In its five-plus years of investigating this case, the government is certainly aware of the documents that are favorable to its case. Likewise, unless the government has turned

---

[3] The court found only "some general, but ultimately inconsequential, support for that proposition." *Id*. at *4 and *7 (rejecting as unpersuasive cases from outside the Ninth Circuit such as *United States v. Mmahat*, 106 F.3d 89 (5th Cir. 1997) and *United States v. Skilling*, 554 F.3d 529 (5th Cir. 2009), *aff'd in part, rvs'd in part, Skilling v. United States*, 561 U.S. 358 (2010)). In addition to the authorities the court found unpersuasive, other district court opinions denying requests for *Brady/Giglio* itemization are equally unpersuasive and easily distinguishable. For example, in *United States v. AU Optronics Corp.*, 2011 WL 6778520 (N.D. Cal. 2011), the court denied the defendants' request for itemization of *Brady/Giglio* material, finding that "the defendants here are well-resourced, have interests that are largely aligned, and perhaps more importantly, have the benefit of years of participation in the civil cases." *Id*. at *2. In the present case, the government is actively attempting to deprive the defendants of virtually all of their resources, while at the same time attempting to disqualify the most capable and experienced attorneys in the country who have participated in prior civil litigation.

a blind eye, it is certainly aware of the documents and items of evidence that contradict or undermine its positions and are *not* helpful to its case, and documents which therefore likely constitute *Brady/Giglio* material. It belies reason that not one document in over 10,000,000 files would qualify under *Brady/Giglio,* and yet none have been identified by the government and, as previously explained, cannot be searched or identified by the defendants. Under these circumstances, courts have repeatedly recognized that the government cannot fulfill its *Brady/Giglio* obligations by simply ignoring them.

For example, in *United States v. Blankenship*, 2015 WL 3687864 (S. D. W. Va. 2015), the court recognized that: "the United States, having determined the nature of the charges and having knowledge of the evidence and witnesses it intends to produce to prove those charges, is in a far better position than the Defendant to know what evidence might be exculpatory and/or impeachment material under *Brady*." *Id*. at *7. The court therefore granted the defendant's motion and ordered the government "to designate and disclose to defense counsel any and all *Brady* material." *Id*. at *8.

Again, *Salyer* is directly on point:

the prosecution knows, as any litigator would know, what evidence, on its face, significantly detracts from the factual elements which must be proven in a particular case….When the prosecution, in good faith, determines that a piece of evidence, on its face, significantly tends to controvert what it is intending to prove, disclosure (and in this case, identification as well) is mandated.

2010 WL 3036444 at *5.[4] *See also United States v. Cutting*, 2017 WL 132403, *10 (N. D. Cal. 2017) (relying on *Salyer* and *Blankenship* and ordering "the government to identify by Bates number the *Brady/Giglio* material in the discovery that has been produced" where "the government's production has not only been voluminous, but its electronic production has been marred by technical problems that seriously impede defendants' ability to search the ESI"). Identical circumstances exist here.

Based on these authorities, this Court should also order the government to specifically identify *Brady/Giglio* material in its present disclosures and subsequent disclosures, as well as any subsequent *Brady/Giglio* material of which the government becomes aware. Defendant Padilla requests that the Court set a deadline for the government to identify such materials, with specificity, within 45 days.

## CONCLUSION

For the foregoing reasons, Andrew Padilla, by and through his undersigned attorney, respectfully requests this Court, pursuant to the principles set forth in *Brady/Giglio* and their

---

[4] The court further noted that:

> During the course of the years long investigation in this case, the government personnel seemed to be able to segregate that evidence which would be useful in the prosecution in terms of guilt, but apparently made no efforts to segregate that evidence which runs counter to the charges…[T]he reviewing personnel apparently made no note of the evidence, or merely having noted it, "stuck it back" in the ever-increasing pile to be an inevitably hidden part of the mass disclosure.

*Id.* at *4.

progeny, to issue its order requiring the government to specifically itemize the *Brady/Giglio*

material in its present disclosures and any subsequent disclosures, as well as any subsequent

*Brady/Giglio* material of which the government becomes aware.

RESPECTFULLY SUBMITTED this 20th day of August, 2018.

PICCARRETA DAVIS KEENAN FIDEL PC

By:  /s/    Michael L. Piccarreta
         Michael L. Piccarreta
         Attorney for Andrew Padilla

On August 20, 2018, a PDF version
of this document was filed with the
Clerk of Court using the CM/ECF
System for filing and for Transmittal
of a Notice of Electronic Filing to the
following CM/ECF registrants:

Reginald Jones, reginald.jones4@usdoj.gov
Peter Kozinets, peter.kozinets@usdoj.gov
Margaret Perlmeter, margaret.perlmeter@usdoj.gov
Kevin Rapp, kevin.rapp@usdoj.gov
Andrew Stone, andrew.stone@usdoj.gov
Paul Cambria, pcambria@lglaw.com
Tom Bienert, tbienert@bmkattorneys.com
Bruce Feder, bf@federlawpa.com
Michael Kimerer, mdk@kimerer.com
Stephen Weiss, sweiss@karpweiss.com

**CERTIFICATION**

I have personally consulted with the government in a good faith and sincere effort to resolve this discovery dispute without the filing of a motion. Those efforts were unsuccessful. I therefore certify, pursuant to LRCrim12.1 and LRCiv7.2(j), that after personal consultation and sincere efforts to do so, counsel have been unable to satisfactorily resolve this matter.

PICCARRETA DAVIS KEENAN FIDEL PC

By:  /s/     Michael L. Piccarreta
Michael L. Piccarreta
Attorney for Andrew Padilla