PICCARRETA DAVIS KEENAN FIDEL PC
2 East Congress Street, Suite 1000
Tucson, AZ  85701
(520) 622-6900
Michael L. Piccarreta
State Bar No. 003962
Email: mlp@pd-law.com
Attorney for Defendant Andrew Padilla

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | NO. CR-18-00422-06-PHX-SPL (BSB) |
| Plaintiff, | REPLY TO RESPONSE TO MOTION |
| vs. | FOR ITEMIZATION OF *BRADY/GIGLIO* |
| | MATERIAL (DOCS. 273, 294) |
| 6.  Andrew Padilla, | |
| (Counts 1-51) | |
| Defendant. | |

**INTRODUCTION**

It is well settled that the government has the affirmative constitutional, legal, and ethical duty to examine its files, identify any *Brady/Giglio* material that is favorable to the defense, and disclose it to the defense. The government does not aver in its response that it has not conducted such a review of its files for *Brady/Giglio* material, nor does the government aver that it conducted such a review but did not find any exculpatory materials, anything that may undermine the government's factual bases or legal theories of the case, or any materials favorable to the defense. Accordingly, the defendants are not asking the government to do anything that it has not already done. The defendants are just requesting the disclosure of the government's *Brady/Giglio* review now. The defendants are certainly not asking the government to take any additional steps to conduct the defendants'

investigation, assist in the presentation of the defense case, or assign prosecutors and investigators to make additional efforts to sift through the files. The defendants are simply requesting the government to disclose the results of its *Brady/Giglio* review now, rather than hiding it in the midst of massive discovery that the defendants (as the government well knows) simply do not have the technical capabilities and resources to effectively search.

This is a simple, straightforward, workable proposal to attempt to alleviate at least some of the difficulties posed by the nature of the government's disclosure. Moreover, it is a proposed partial solution that is well within this Court's discretion under the circumstances of this case and under settled Ninth Circuit law recognizing the district court's authority to order disclosure beyond that which may be otherwise specifically required under the applicable rules, statutes, and other discovery requirements. It will require very little additional effort for the government to simply disclose the results of its mandated *Brady/Giglio* review. But the government protests this simple, workable, partial solution, solely in an apparent attempt to maintain tactical advantage, especially if the defendants are unable to find the *Brady/Giglio* material. Again, the government's conduct here must be considered against the backdrop of its other efforts to disadvantage the defendants, such as massive pre-trial seizures of assets, to name just one. From the defendants' standpoint, the government's attempt to portray itself as going above and beyond its duties in order to assist the defendants rings particularly hollow. Rather, the government's actions have required the defendants to seek the assistance of the courts, simply in an effort to prepare this case for trial. The present motion is one such effort. This Court clearly has the authority to order the relief requested, rather than approve the government's effort to evade its responsibilities by

concealing *Brady*/*Giglio* materials in the midst of massive discovery that the defendants cannot effectively search.

## FACTUAL BACKGROUND

The present motion addresses material in the government's possession that is favorable to the defense. The Travel Act and money laundering offenses charged in the indictment are both specific intent offenses requiring the government to prove that the defendants knew that their conduct was unlawful. Defendant Andrew Padilla was a salaried employee at the website Backpage.com ("Backpage"), a website that sold classified advertisements in a wide variety of areas, including adult categories. Some of Mr. Padilla's duties included attempting to ensure that third-party posters complied with Backpage's terms of use. With regard to the defendants' beliefs that their conduct was lawful, *i.e.* their lack of specific intent to violate the law, Mr. Padilla and others at Backpage had received assurances in a string of cases from across the country that their actions with regard to these third-party postings were protected under the First Amendment to the United States Constitution and could not be criminally prosecuted.[1] The defendants also received assurances from high-

---

[1] To name just three of these cases, *Dart v. Craigslist, Inc.*, 665 F.Supp.2d 961, 963 (M.D. Ill. 2009), dismissed a lawsuit claiming that "Craigslist makes it easier for prostitutes, pimps, and patrons to conduct business" in violation of state laws and the Travel Act; *M.A. v. Village Voice Media Holdings, LLC*, 809 F.Supp.2d 1040, 1054 (E.D. Mo. 2011), held that "allegations of Backpage aiding and abetting [defendant convicted of violating the Travel Act] do not describe the specific intent required for aiding and abetting" under 18 U.S.C. § 2; and *Backpage.com, LLC v. Dart*, 807 F.3d 229, 230-31 (7th Cir. 2015), held that the county sheriff was "using the power of his office to threaten legal sanctions against the credit-card companies for facilitating future speech, and by doing so he is violating the First Amendment unless there is *no* constitutionally protected speech in the ads on Backpage's website – and no one is claiming that." (Emphasis in original).

ranking Department of Justice officials that then-existing federal criminal laws could not be used to prosecute websites like Backpage for the contents of ads posted by third parties, absent some evidence of actual involvement with the third parties' illegal activities.[2] Indeed, while the grand jury was in session and a little over one month before it handed down the original indictment in the present case, key legislators admitted that "current federal criminal law…lacks proper prosecutorial tools to combat these websites…general knowledge that sex trafficking occurs on a website will not suffice as the knowledge element must be proven as to a specific victim."[3] In the course of its investigation, the government no doubt encountered similar information supporting the defendants' beliefs that their conduct was lawful and constitutionally protected. The question is what additional material in the government's files is favorable to the defendants. There is no doubt that such *Brady*/*Giglio* material exists, and the government has not claimed otherwise.

The proceedings in the Western District of Washington where the government began its investigation of Backpage and instituted grand jury proceedings five years ago now also made it clear that such *Brady/Giglio* material exists in the government's files. United States District Judge Richard Jones specifically noted the government's same novel theory of

---

[2] "I am not aware of any laws that would make them [criminally] liable [for third-party postings], unless there was evidence that Craigslist was a participant…conspiring with those who were misusing their site, that is, knowingly conspiring to violate laws….I am not aware of anything that shows us that Craigslist might be criminally liable…." Testimony of DOJ's National Coordinator for Child Exploitation, Prevention, and Interdiction, Francie Hakes, Domestic Minor Sex Trafficking: Hearing Before Subcommittee on Crime, Terrorism, & Homeland Security of the House Committee on the Judiciary, 111th Cong. 215-16 (2010).

[3] House of Representatives Report 115-572 Part 1, p. 5, February 20, 2018.

prosecution and quashed the grand jury subpoenas there. (*See* Exhibit A which will be filed under seal). The fact that the grand jury investigation terminated there demonstrates that the government presumably came across documents, witness statements, and similar materials that it recognized were problematic to its case and led it to abandon the prosecution there. The defendants are entitled to these exculpatory materials as they bear directly on the defendants' lack of specific intent.

The government's response correctly notes that the government met with Mr. Padilla's counsel and discussed documents the government believed were favorable to its case, and later provided those documents to Mr. Padilla's counsel. The government also notes that the United States Senate's Permanent Subcommittee on Investigations' January 2017 Report contains information about Mr. Padilla that the government believes is favorable to its case. The government further correctly notes that it has provided "hot" documents that the government believes support the allegations in the indictment. (Doc. 294, pp. 1-3).[4] While the defendants appreciate these efforts, they clearly do not fulfil the government's *Brady*/*Giglio* obligations to disclose and provide to the defendants materials that are *not* favorable to its case.

The government's response also notes that it provided its 10 million plus pages of discovery in a format that is searchable using the Relativity platform, in conformance with the "ESI Protocol." (Doc. 294, pp. 2-6). However, the ESI protocol clearly contemplates that

---

[4] However, the government has still not produced the ads referenced in the indictment as promised.

the parties will be on relatively equal footing when it comes to possessing the resources to engage in e-discovery, which is simply not the case here, as the government well knows. While the government claims that the defendants' assertions about the costs of setting up and using Relativity are insufficiently supported (Doc. 294, p. 12), the government cannot seriously dispute that those costs will be in the hundreds of thousands.[5] Again, and more to the point, the government's compliance with the ESI Protocol does not relieve it of its independent and specific *Brady/Giglio* obligations.

## ARGUMENT

### This Court Clearly Has The Authority To Order The Itemization Of *Brady/Giglio* Material To Facilitate The Preparation Of This Case For Trial.

It is well settled that district courts, in the effective management of their cases, have the authority to order itemization of *Brady/Giglio* materials, especially in cases involving massive government disclosures and defendants who do not stand on equal footing with the government in their ability to access and search discovery materials. *See, e.g., United States v. Salyer*, 2010 WL 3036444 (E. D. Cal. 2010); *United States v. Hsia*, 24 F.Supp.2d 14 (D.

---

[5] If actually contested, the defense will provide to the Court estimates from vendors relating to the costs. In that regard, undersigned counsel previously incorrectly asserted that only the law firm of Davis Wright Tremaine ("DWT") had the Relativity platform but lacked sufficient infrastructure to host and support Relativity databases as large as those for the Backpage-related materials (Doc. 273, p. 3). Undersigned counsel has recently learned that the law firm of Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, PC, representing Defendant Brunst, has the ability to use Relativity. The Bird/Marella firm has received estimates from vendors indicating costs of processing and storing the government's disclosure would exceed $350,000. DWT has received additional similar estimates ranging from approximately $445,000 to approximately $560,000. Again, these estimates do not include the additional costs and fees that would be incurred in reviewing all of the documents and data provided by the government. (*See* Doc. 273, p. 3 and n. 1).

D. C. 1998); *United States v. Cutting*, 2017 WL 132403 (N. D. Cal. 2017); *United States v. Blankenship*, 2015 WL 3687864 (S. D. W. Va. 2015). Of course, because these matters are committed to the discretion of the district courts, there are cases in which the courts have not ordered the government to specifically itemize *Brady/Giglio* materials. However, none of the authorities cited in the government's response preclude this Court from ordering the requested relief, and the Ninth Circuit Court of Appeals has specifically acknowledged the district court's authority to order similar disclosure, as the district court in *Salyer* explained:

> The case law is established, as a *general* rule, that if *Brady/Giglio* were disclosed to the defense, the fact that the government did not identify it as such will not cause the conviction to be reversed. However, that case law does not preclude the undersigned as a matter of case management (and fairness) in ordering the identification to be done.

2010 WL 3036444 at *2 (emphasis in original).

The court noted the similar general rule that a conviction will not be reversed due to the government's failure to identify its witnesses pretrial, and added:

> However, that fact does not preclude a court from ordering such identification and disclosure prior to trial as a matter of case management where appropriate. *United States v. W. R. Grace*, 526 F.3d 499, 509-510 (9th Cir. 2008) (en banc). The undersigned is doing nothing that the *Grace* case does not approve of in general principle as a matter of case management in this particular case. *See also* Advisory Committee Notes, Rule 16, 1974 amendment: "The rule is intended to prescribe the minimum amount of discovery to which the parties are entitled. It is not intended to limit the judge's discretion to order broader discovery in appropriate cases." *See also* Fed. Crim. P. 2. In sum there is no authority which prohibits the court's exercise of discretion here.

*Id*.

It is therefore clear that this Court has the authority to order the relief requested, and the government's response relies entirely on reasoning that the *Salyer* court correctly found

"ultimately inconsequential" and unpersuasive. *Id.* at \*4; s*ee also id.* at \*7 (rejecting as unpersuasive cases from outside the Ninth Circuit such as *United States v. Mmahat*, 106 F.3d 89 (5th Cir. 1997) and *United States v. Skilling*, 554 F.3d 529 (5th Cir. 2009), *aff'd in part, rvs'd in part, Skilling v. United States*, 561 U.S. 358 (2010)).[6]

But the government's reliance on its cited authorities is unavailing for one simple additional reason. All of the authorities relied upon by the government[7] rely on the assumption (as with the ESI Protocol) that the parties are on relatively equal footing with respect to their access to technical capabilities and resources necessary to process and search massive government disclosures, *i.e.* that the defendants have the "same access to the information that the Government does." *United States v. Dunning*, 2009 WL 3815739, \*1 (D. Ariz. 2009). Again, as the government well knows, that is not the case here due to the

---

[6] Significantly, the government's response omits the fact that the "hot documents" in *Skilling* included "hot documents" on *both* sides. "The government produced a set of 'hot documents' that it thought were important to its case *or were potentially relevant to Skilling's defense*." 554 F.3d at 557 (emphasis added). This is precisely what the government refuses to do in this case.

[7] *Rhoades v. Henry*, 638 F.3d 1027 (9th Cir. 2011); *United States v. Warshak*, 631 F.3d 266 (6th Cir. 2010); *United States v. Skilling*, 554 F.3d 529 (5th Cir. 2009); *United States v. Pelullo*, 399 F.3d 197 (3d Cir. 2005); *United States v. Mmahat*, 106 F3d 89 (5th Cir. 1997); *United States v. Parks*, 100 F.3d 1300 (7th Cir. 1997); *United States v. Marrero*, 904 F.2d 251 (5th Cir. 1990); *United States v. Toomer*, 2018 WL 3745815 (D. Nev. 2018); *United States v. McGill*, 2016 WL 48214 (E. D. Penn. 2016); *United States v. Weaver*, 992 F.Supp.2d 152 (E. D. N. Y. 2014); *United States v. Mohammad*, 2012 WL 1605472 (N. D. Ohio 2012); *United States v. AU Optronics Corp.*, 2011 WL 6778520 (N. D. Cal. 2011); *United States v. Rubin-Chambers, Dunhill Ins. Servs.*, 825 F.Supp.2d 451 (S. D. N. Y. 2011); *United States v. Ohle*, 2011 WL 651849 (S.D.N.Y. 2011); *United States v. Simpson*, 2011 WL 978235 (N. D. Tex. 2011); *United States v. Dunning*, 2009 WL 3815739 (D. Ariz. 2009); *United States v. W. R. Grace*, 401 F.Supp.2d 1069 (D. Mont. 2005); *United States v. Ferguson*, 478 F.Supp.2d 220 (D. Conn. 2007); *United States v. Eisenberg*, 773 F.Supp. 662 (D. N. J. 1991); *United States v. Shoher*, 555 F.Supp. 346 (S.D.N.Y. 1983).

government's actions.

As the court in *Salyer* also correctly recognized, the authorities relied upon by the government give short shrift to the government's affirmative duties under *Brady/Giglio* to conduct an independent review of its files for the purpose of identifying and disclosing specific documents for the defendant. The court noted that, under the *Brady/Giglio* guidelines set forth in the Department of Justice's own memorandum, and under well-established case law, "the *prosecution* has the duty to *affirmatively* scour those records of the agencies considered the 'government' for purposes of the criminal case in order to determine and acquire those materials which would be considered *Brady* exculpatory and *Giglio* impeaching." 2010 WL 3036444 at *3 (emphasis in original).[8] The court further noted that the DOJ guidelines "fashioned after some embarrassing non-disclosures in other cases,[9] command an *actual review* of the materials acquired during investigation of a criminal case for the purpose of disclosing *Brady*/*Giglio* materials." *Id.* (emphasis in original). "Tellingly, nowhere in the memorandum does it even suggest that in lieu of affirmatively looking for *Brady*/*Giglio* the prosecutor may determine not to look at all and simply disclose the entire discovery file." *Id.* Finally, the court rejected the government's argument "that it performs its *Brady*/*Giglio* duties as set forth above, by *not* looking for the required information as the cases seem to direct, but by just disclosing *everything*." *Id.* at *4 (emphasis in original).

The United States Attorneys' Manual also sets forth specific directives for federal

---

[8] *See also ABA Standards for Criminal Justice, Prosecution Function*, Standard 3-3.11 (Third Edition).

[9] *See, e.g., United States v. Stevens*, 2009 WL 6525926 (D. D. C. 2009).

prosecutors to comply with their affirmative *Brady/Giglio* obligations, including specifically identifying and disclosing any information that would negate the required *mens rea*. USAM, § 9-5.001(C)(1) ("A prosecutor must disclose information that is inconsistent with any element of any crime charged…."). Federal prosecutors are directed to conduct a "review process" of investigative agency files, witness files, evidence and information gathered during the investigation, substantive case-related communications, potential *Giglio* information relating to witnesses, and information obtained in witness interviews. *Id.*, § 9-5.002(B). Then, "[h]aving gathered the information described above, prosecutors must ensure that the material is reviewed to identify discoverable information." *Id.* Like the Department of Justice memorandum discussed in *Salyer*, "nowhere in the [U.S. Attorney's Manual] does it even suggest that in lieu of affirmatively looking for *Brady*/*Giglio* the prosecutor may determine not to look at all and simply disclose the entire discovery file." 2010 WL 3036444 at *3.

Accordingly, the defendants are not requesting the government to do anything that is not already constitutionally, legally, and ethically mandated to do. It is simply impossible to believe that this is the only case (incidentally the case to which the government claims it has devoted more resources than virtually any other in this district) in which the government's scores of agents and lawyers have *not* examined the evidence and determined which parts may be problematic for their case and/or may constitute exculpatory evidence, and made note of that fact somehow. The defendants are merely asking the government to comply with its clear obligations under *Brady/Giglio* and disclose the results of the its *Brady/Giglio* review now, in an attempt to partially address some of the problems created by the

government's disclosure, and to prepare this case for trial. The defendants certainly are not, as the government contends, requesting the government to "conduct the defendants' investigation or assist in the presentation of the defense case." (Doc. 294, p. 6, citation omitted).

Finally, this Court should reject the government's suggestion that this Court should authorize the payment of hundreds of thousands of dollars in Criminal Justice Act funds, (Doc. 294, pp. 12-13), to rectify the *Brady/Giglio* problem that the government, itself, caused by the nature of its massive disclosure and its failure to specifically disclose *Brady/Giglio* materials. The government can easily rectify this problem, assist in trial preparation, and ensure the fairness of the process by simply disclosing the results of its *Brady/Giglio* review now. Indeed, the fact that the government is attempting to fill its coffers with its massive pretrial seizures of defendants' assets on one hand, while suggesting that defendants resort to the government's resources for indigent defense services on the other, speaks volumes about the government's real motives here.[10]

## CONCLUSION

For the foregoing reasons, the defendants respectfully request this Court to exercise its discretion and order the government to itemize its *Brady/Giglio* material within 45 days.

---

[10] *See Luis v. United States*, 578 U.S. __, __ 136 S.Ct. 1083, 1095 (2016) (noting the "overworked and underpaid" system of indigent defense services under the Criminal Justice Act and recognizing the "substantial risk that accepting the Government's views would…render less effective the basic right the Sixth Amendment seeks to protect").

RESPECTFULLY SUBMITTED this 18th day of September, 2018.

PICCARRETA DAVIS KEENAN FIDEL PC

By: ___/s/___   Michael L. Piccarreta
                Michael L. Piccarreta
                Attorney for Andrew Padilla

On September 18, 2018, a PDF version
of this document was filed with the
Clerk of Court using the CM/ECF
System for filing and for Transmittal
of a Notice of Electronic Filing to the
following CM/ECF registrants:

Reginald Jones, reginald.jones4@usdoj.gov
Peter Kozinets, peter.kozinets@usdoj.gov
Margaret Perlmeter, margaret.perlmeter@usdoj.gov
Kevin Rapp, kevin.rapp@usdoj.gov
Andrew Stone, andrew.stone@usdoj.gov
Paul Cambria, pcambria@lglaw.com
Tom Bienert, tbienert@bmkattorneys.com
Bruce Feder, bf@federlawpa.com
Michael Kimerer, mdk@kimerer.com
Stephen Weiss, sweiss@karpweiss.com