PICCARRETA DAVIS KEENAN FIDEL PC
2 East Congress Street, Suite 1000
Tucson, Arizona 85701-1782
(520) 622-6900
Michael L. Piccarreta
State Bar No. 003962
Email:  mlp@pd-law.com
Attorney for Defendant Andrew Padilla
              -and-
KARP & WEISS, P.C.
3060 N Swan Road
Tucson, AZ 85712
(520) 325-4200
Stephen M. Weiss
State Bar No. 002261
Email: sweiss@karpweiss.com
Attorney for Defendant Joye Vaught

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>6. Andrew Padilla,<br>   (Counts 1-51)<br>7. Joye Vaught,<br>   (Counts 1-51)<br><br>Defendants. | NO. CR-18-00422-06-PHX-SPL<br><br><br>MOTION TO DISMISS DUE TO GOVERNMENT INTERFERENCE WITH RIGHT TO COUNSEL AND REQUEST FOR DISCLOSURE OR, IN THE ALTERNATIVE, MOTION TO WITHDRAW<br><br>[Oral Argument Requested] |

Defendants Andrew Padilla and Joye Vaught respectfully request this Court to dismiss the indictment against them because the government's improper interference with their right to counsel of choice has resulted in the denial of that right under the Fifth and Sixth Amendments to the United States Constitution.

Excludable delay under 18 U.S.C. § 3161(h)(1)(D) may occur as a result of this motion or an order based thereon, as explained more fully below.

## I.   BACKGROUND

Defendants Andrew Padilla and Joye Vaught worked at the website Backpage.com ("Backpage") until the government shut it down. By virtue of their employment with Backpage, Padilla and Vaught earned the right to indemnification and/or advancement of funds for civil or criminal matters that arose as a result of their employment.[1] From the time the defendants were indicted on March 28, 2018, the government has also engaged in massive *ex parte* seizures of assets belonging to some of the defendants and Backpage, while engaging in a course of conduct seeking to avoid judicial review of the illegality of the seizures. The history of the government's unlawful seizures[2] and the defendants' attempts to obtain judicial review has been previously briefed for this Court.[3] Defendants will not repeat that history here, but will set out a chronology of the events relevant to the present motion.

In January of 2017, undersigned counsel Michael L. Piccarreta, Esq. began his representation of Mr. Padilla. On March 28, 2018, the government obtained the initial

---

[1] *See United States v. Stein*, 541 F.3d 130, 155 (2d Cir. 2008) (recognizing the Sixth Amendment right to counsel of choice for "an employee who reasonably expects to receive attorneys' fees as a benefit or perquisite of employment, whether or not the expectation arises from a legal entitlement").

[2] The government's seizures and seizure warrants violated the First, Fourth, Fifth and Sixth Amendments. The basis for this is set forth in the pleadings that have been filed but have yet to receive judicial review. Thus, the government has bootstrapped illegal and unconstitutional seizures by using the essentially identical unconstitutional warrants to render these defendants impecunious and unable to defend themselves.

[3] Some of these details are set forth in Docs. 360, 382, and 443, incorporated herein by reference pursuant to LRCrim 12.1 and LRCiv 7.1(d)(2).

indictment in this matter in this district, and also began its massive civil seizures of assets by filing in the Central District of California, choosing that district rather than Arizona. On March 30, 2018, undersigned counsel Stephen M. Weiss, Esq. began his representation of Ms. Vaught. On April 6, 2018, the government arrested the defendants, searched the residences of some defendants (not Padilla or Vaught), and seized large amounts of personal property from those defendants. At that time, the government attorneys indicated to Mr. Larkin's previous attorneys and Mr. Hyer's attorney that the government was not seizing funds in attorney trust accounts.[4] That information was relayed to other co-counsel in the case. On April 25, 2018, the government filed its unsuccessful motion to disqualify First Amendment Davis Wright Tremaine LLP ("DWT") and Henze Cook Murphy PLLC ("HCM"), law firms that had successfully represented Backpage and its officers and employees in civil and criminal matters across the country for many years. (Doc. 118).[5] On April 26, 2018, the parties submitted a proposed case management schedule in connection with the April 30, 2018, status conference. The government made no mention to this Court or any of the defense attorneys of any seizure of attorneys' trust accounts. Defendants Padilla and Vaught agreed to the proposed case management schedule without knowledge that the

---

[4] This is consistent with the general practice in this district for cases like this. One assumes, but does not know, that the differential treatment was a decision made at higher levels of the Department of Justice.

[5] In a second prong of its attack against DWT, the government later seized DWT's trust account in August 2018, again attempting to remove defendants' counsel of choice for First Amendment issues. Eventually, the government permitted DWT to retain earned fees but not additional funds that were kept in the IOLTA trust account for future fees to be incurred in this case.

government would later deprive them of funds required to defend the case, review the government disclosure, and meet the obligations set forth in the schedule. On May 2, 2018, the Court issued its Scheduling Order. (Doc. 131).

On May 4, 2018, in a meeting with counsel for Mr. Padilla, the government expressed concerns about the funds in counsel's attorney trust account and inquired about the existence of any indemnification/advancement agreements. On May 7, 2018, counsel for Mr. Padilla responded via correspondence with attached paperwork relating to the indemnification and advancement provisions applicable to Mr. Padilla.[6] On May 18, 2018, the government again raised its "concerns" about funds for Mr. Padilla's representation.[7] On June 13, 2018, counsel for Mr. Padilla then provided a detailed response setting forth the grounds for Mr. Padilla's and counsel's beliefs that the funds were not tainted and could not be subject to seizure or forfeiture.[8] Counsel for Mr. Padilla did not hear anything further on the subject from the government for many months.

The parties then engaged in the litigation of multiple pretrial motions, and this Court heard oral arguments on the motions on October 5, 2018. On October 12, 2018, this Court issued its order denying the government's motion to disqualify DWT and HCM. (Doc. 338). On October 15, 2018, the Court issued its order denying Mr. Padilla's motion for itemization of *Brady*/*Giglio* materials, but "implor[-ed]" the government to abide by its avowal in open court that it would disclose any *Brady*/*Giglio* materials within 10 days of their discovery.

---

[6] *See* attached Exhibit 1.
[7] *See* attached Exhibit 2.
[8] *See* attached Exhibit 3.

(Doc. 339). On October 23, 2018, and October 26, 2018, counsel for Mr. Padilla made two separate discovery requests for specific types of *Brady*/*Giglio* materials.[9] The government responded via letter, essentially setting forth its theory of the case and its justification for not producing any *Brady* materials.[10]

On October 31, 2018, approximately two weeks after this Court issued the orders referenced above, the government obtained its *ex parte* seizure warrants for the attorney trust accounts of counsel for Mr. Padilla, Ms. Vaught, and other law firms who were not attorneys of record in the criminal case. Undersigned counsel were advised of the seizure warrants on or about November 7, 2018. The government permitted undersigned counsel to keep any earned fees through November 30, 2018, but required counsel to provide edited billing statements to the government for its review. The government has since informed counsel for defendants Padilla and Vaught that the trust funds they hold cannot be used to pay any fees earned after November of 2018.[11] Thus, there have been no payments to counsel for Padilla and Vaught for all work performed or costs incurred since December 1, 2018.

The government has also represented, as the seizure warrants have expired, that it likely will seek to again seize the IOLTA trust accounts, and that defense counsel may expose themselves to criminal liability if they use those funds to pay fees earned after November

---

[9] *See* attached Exhibits 4 and 5.
[10] *See* attached Exhibits 6 and 7.
[11] *See* attached Exhibit 8.

2018.[12] Undersigned counsel clearly and unmistakably understood this statement to mean there was the potential of criminal investigation and no guarantee that there would not be criminal prosecution if they withdrew any funds from their trust accounts, even though the seizure warrants had expired and new ones had not been issued. The government actions and words effectively re-froze the trust accounts as no attorney is willing to risk prosecution, even a bad-faith wrongful prosecution, in light of such a statement.[13] Thus, the government has engaged in a pattern of conduct resulting in the inability to use funds in attorney trust accounts to continue funding Padilla's and Vaught's retained counsel of choice, retain experts, fund technical assistants to navigate the discovery maze of government disclosure or defend this case.

In striking contrast, the government is *not* seeking any attorney trust account funds from cooperating defendants Mr. Ferrer and Mr. Hyer until the case is completed. Ironically, Ferrer and Hyer, for whatever reason, admitted guilt while Vaught and Padilla, who have in part different cases, are presumed and profess innocence, yet they are the ones the

---

[12] *See* attached Exhibit 9, p. 12 (transcript of hearing held in the Central District of California before the Honorable Rozella A. Oliver on December 12, 2018). Although the proceedings in the Central District of California have been opened, this transcript is currently under seal. Thus, it is provided to this Court under seal, although it is anticipated that this transcript will in the future be removed from placement under seal as there does not appear the need for secrecy.

[13] Whether the government meant their words to be a threat or whether defense counsel misinterpreted these words as a threat makes no difference. The result is the same. Defense counsel, each of whom has been practicing criminal law for decades, has not had government counsel intimate such action in a pending criminal case. Regardless of the government intent, the trust accounts are unavailable for use due to government action.

government seeks to deprive of funds to defend themselves. However, these funds are derived from the same sources and would therefore be subject to seizure and forfeiture under the same theories the government espouses. The message is clear; if you plead and cooperate, the lawyer will get paid for professional services. If, on the other hand, the presumed-innocent defendant disputes the government's case, their lawyers trust accounts will be seized, rendering the presumed-innocent defendant with an inability to defend against the charges with counsel of choice. The government actions create an inherent conflict between the financial interests of the lawyer and the interests of the client.

Defendants Padilla and Vaught now request this Court to dismiss the indictment against them due to this violation of their Fifth Amendment right to due process and Sixth Amendment right to counsel of choice, based on the principles set forth in *United States v. Stein*, 435 F.Supp.2d 330 (S. D. N.Y. 2006), *aff'd* 541 F.3d 130 (2nd Cir. 2008), and this Court's supervisory powers.

## II.   ARGUMENT

### A.   The Government's Interference With Assets Earmarked To Fund The Defense Of The Present Case Has Denied Defendants Their Right To Assistance Of Counsel Of Choice In Violation Of The Fifth and Sixth Amendments To The United States Constitution.

Among the rights guaranteed by the Sixth Amendment to the United States Constitution is the right of a defendant to be represented by the attorney of his or her choosing. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 146 (2006) ("the Sixth Amendment right to counsel of choice…commands…that the accused be defended by the counsel he believes to be best"); *Powell v. Alabama*, 287 U.S. 45, 53 (1932) (due process

also requires that "a defendant should be afforded a fair opportunity to secure counsel of his own choice"). "The right to select counsel of one's choice…has been regarded as the root meaning of the constitutional guarantee." *Gonzalez-Lopez*, 548 U.S. at 147-48. Accordingly, erroneous deprivation of the right to counsel of choice constitutes fundamental error requiring automatic reversal. *Id*. at 148.

The Sixth Amendment right to counsel of choice extends to any "employee who reasonably expects to receive attorneys' fees as a benefit or perquisite of employment, whether or not the expectation arises from a legal entitlement." *Stein*, 541 F.3d at 155. In *Stein*, the Second Circuit Court of Appeals upheld the district court's dismissal of the indictment due to the government's interference with corporate officers' and employees' right to counsel of choice. Specifically, the government interfered with funds earmarked to pay defendants' legal fees. *Id*. at 136. Accordingly, the Second Circuit affirmed the district court's dismissal of the indictment, accepting the defendants' claim that "the government unjustifiably interfered with their relationship with counsel and their ability to mount the best defense they could muster." *Id*. at 155.[14]

*Stein* did not involve the pretrial seizure of attorney trust funds, and the legality of such government conduct was not at issue. In the present case, the government's seizure of

---

[14] The Second Circuit affirmed the district court's ruling dismissing the indictment on Sixth Amendment grounds and did not address the district court's separate finding that the government's interference with assets to fund attorneys' fees for counsel of choice also violated the defendants' substantive due process rights. 541 F.3d at 136. *See United States v. Stein*, 435 F.Supp.2d 330, 365 (S. D. N.Y. 2006); *United States v. Stein*, 495 F.Supp.2d 390, 412 (S. D. N.Y. 2007).

publishing proceeds, defendants' assets, and attorney trust accounts has yet to be judicially approved for these defendants nor subject to the adversary process for the host of reasons defendants' have raised previously. The government will undoubtedly claim their actions are lawful. The defendants strongly believe the government's actions were unlawful and unconstitutional. Those matters are now being litigated in proceedings in the District Court for the Central District of California and the Ninth Circuit Court of Appeals, and defendants Padilla and Vaught will not reiterate those arguments here.[15] However, even if, contrary to law and fact, the government's seizures of attorney trust accounts were lawful, the government's conduct nevertheless constitutes improper interference with Padilla's and Vaught's right to counsel of choice.

*Initially*, the fact that the government is not seizing the same purportedly "tainted" funds from defendants who cooperate with the government shows the government's willingness to undermine the full functioning of the adversary system. This further shows that the source of the funds is not an issue. It is defendants' decision to exercise his and her constitutional rights that prompt these seizures. The government, by its actions, rewards

---

[15] The Court has indicated that issues relating to the release of seized assets should be raised in the Central District of California. *See* Doc. 447, pp. 3-4 ("At a hearing held on November 16, 2018, the Court declined to disrupt the seizure warrants issued by the Central District of California when similar challenges were brought by other Defendants (Docs. 360, 365, 376), and the Court found that the Defendants had a sufficient legal remedy for any challenges to the seizure warrants issued by the Central District of California in that district. (Doc. 401 at 56, 57-58, 59)…Lacey has not provided the Court with any precedent or persuasive argument for why he cannot seek the requested equitable relief in the Central District of California…. Therefore, as discussed in the Court's previous Order, the Court finds that any legal or equitable relief from the warrants issued by the Central District of California is properly sought in that district").

individuals who waive their constitutional rights and punishes those accused who exercise their constitutional rights. ***Secondly***, the fact that the government did not attempt to seize attorney trust accounts until years after the representation began and many months after the indictment (and after vigorous assertion of their constitutional rights and litigation of contested motions in the case) reveals the appearance of government retaliation against these defendants for exercising their protected constitutional and statutory rights. ***Thirdly***, the government's actions have completely disrupted the defense, creating uncertainty and limiting the ability for undersigned counsel to proceed in a complex and time-consuming criminal litigation. It is especially troubling here, as Mr. Padilla, through counsel, has rejected plea offers, asserted his innocence, and indicated his intent to exercise his constitutional right to a jury trial. ***Fourthly***, this type of seizure of attorney trust accounts in the middle of hotly-contested criminal litigation, especially in a First Amendment case, have not occurred before in this district, at least to undersigned counsel's memory. It is especially troubling when there has not been a contested adversary hearing demonstrating that even one penny of the publishing assets is tainted. This is not per se contraband but the legitimately earned proceeds of a business that had been operating for years collecting revenue and paying its bills of all types including attorneys' fees.

   ***Finally***, this is part of a pattern to deprive defendants of their Sixth Amendment rights. The government seeks *ex parte* seizure warrants by choosing a different district from where the criminal matter is filed thus necessitating the expenditure of additional financial resources outside of this jurisdiction. The government adopts a course of conduct seeking to avoid judicial review of its seizures. The parties are required to litigate these matters, which

are mostly collateral, albeit time consuming and costly. The government then unsuccessfully attempts to conflict out First Amendment counsel of choice which took considerable time and resources to resolve. The government provides disclosure in such a manner that it cannot be effectively reviewed without expensive technical assistance. After discussions, the government chooses not to seize the trust accounts which contain the funds to defend the case. After defendants assert their constitutional rights, the government changes course and seizes the trust accounts of First Amendment counsel to try to, once again unsuccessfully, remove them from the case. Counsel for Padilla and Vaught vigorously assert their clients' rights, including particular demands for *Brady* material, and part of the government's response is a seizure of their attorneys' trust accounts. This action ties up counsel on a collateral matter to this day. The government then, without the benefit of a seizure warrant, indicates that if the trust accounts are used to defend the case, the attorneys will be investigated with no assurances they would not be prosecuted. All of these actions cannot be looked upon in a vacuum, but as a pattern which has significantly and adversely impacted defendants' due process and Sixth Amendment rights.

It is noteworthy that Chief Justice Roberts has recently been highly critical of precisely this kind of conduct and has strongly voiced his concerns about seizures of attorneys' fees undermining the adversary system. "An individual facing serious criminal charges brought by the United States has little but the Constitution and his attorney standing between him and prison" and the right to counsel is, in many ways, "the most precious right a defendant has, because it is his attorney who will fight for the other rights the defendant enjoys." *Kaley v. United States*, 571 U.S. 320, 341, 344

11

(2014) (Roberts, C. J., dissenting). "The possibility that a prosecutor could elect to hamstring his target by preventing him from paying his counsel of choice raises substantial concerns about the fairness of the entire proceeding." *Id*. at 345.

> The issues presented here implicate some of the most fundamental precepts underlying the American criminal justice system. A person accused by the United States of committing a crime is presumed innocent until proven guilty beyond a reasonable doubt. But he faces a foe of powerful might and vast resources, intent on seeing him behind bars. That individual has the right to choose the advocate he believes will most ably defend his liberty at trial.
>
> …
>
> Federal prosecutors, when they rise in court, represent the people of the United States. But so do defense lawyers -- one at a time. In my view, the Court's opinion pays insufficient respect to the importance of an independent bar as a check on prosecutorial abuse and government overreaching. Granting the Government the power to take away a defendant's chosen advocate strikes at the heart of that significant role.

*Id*. at 357-58. All of Chief Justice Roberts' concerns are playing out in this case.

Under these circumstances, the government's actions constitute interference with Padilla's and Vaught's right to counsel of choice and their right to due process right in the middle of the litigation.

> **1.    Permitting Cooperating Defendants To Keep Funds Earmarked For Attorneys' Fees While Denying Those Funds To Defendants Who Are Contesting The Charges Is Unseemly And Undermines The Workings Of The Adversary System.**

"The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free." *Herring v. New York*, 422 U.S. 853, 862 (1975). In the present case, the government is seeking to weaken these non-cooperating defendants' ability to defend the case, gain tactical advantage, and undermine the contemplated workings of the

adversary system. As in *Stein*, "the government conducted itself in a manner that evidenced a desire to minimize the involvement of defense attorneys." 435 F.Supp.2d at 353.

The government is perfectly willing to allow defendants to continue to use purportedly "tainted" assets to defend themselves as long as those defendants curry favor with the government. The result is that Ferrer and Hyer continue to utilize assets in their attorneys' trust fund accounts and continue to be represented by their counsel of choice, while non-cooperating, presumed-innocent defendants Padilla and Vaught are severely disadvantaged because they no longer have funds to defend the case. Indeed, the government continues to press its tactical advantage by holding Padilla and Vaught to deadlines they agreed to when they believed that they would continue to have the funds to meet those obligations.

The government is sending a very clear message here. If the government believes a defendant will make it *easier* for the government to win its case through cooperation with the government and willing to waive their constitutional rights, the defendant can continue to keep his attorney trust funds and the services of his counsel of choice. If, on the other hand, the government believes that the presumed-innocent defendant will make it *harder* for the government to win its case through vigorous representation and assertion of the defendant's rights, the defendant will be deprived of assets necessary to fund his counsel of choice and thereby deprived of counsel. This "ends justify the means" approach is unseemly and unworthy of the United States government. *United States v. Helmandollar*, 852 F.2d 498, 501 (9th Cir. 1988) ("This 'ends justify the means' approach is wholly contrary to the duty of a United States prosecutor and analogously to agents of the United States Government to

act with the utmost probity and uprightness").

> **2.      The Timing Of The Government's Seizure Of Attorney Trust Funds Shows The Government's Improper Purpose In Retaliating Against Defendants For Exercising Their Protected Constitutional And Statutory Rights.**

The government's seizure of attorney trust accounts occurred some 18 months after counsel began representing Mr. Padilla and seven months after Mr. Weiss began representation of Ms. Vaught which coincided with the initial indictment. It was after months of vigorous litigation in the case and approximately two weeks after receiving rulings on litigated pretrial motions (some of which went against the government), that the government obtained its attorney trust account *ex parte* seizure warrants for Mr. Padilla and Ms. Vaught. This timing, in and of itself, and the government's actions demonstrate the government's desire to be no longer troubled by attorneys vigorously and effectively representing defendants' interests and defending their rights. The government's timing and the undisputed facts reveal its tactical strategy. Finally, the unusualness and selective use of mid-case seizure of attorney trust accounts is clearly an intentional strategy which has immensely impaired the ability of Padilla and Vaught to defend this case.

In this regard, cases involving vindictive prosecution are instructive in evaluating the government's conduct in seizing attorney trust accounts after defendants assert their rights. "[W]hen prosecutorial actions stem from an animus toward the exercise of a defendant's rights... vindictive prosecution exists." *United States v. Gallegos- Curiel,* 681 F.2d 1164, 1169 (9th Cir. 1982). The appearance of vindictiveness results "where, as a practical matter, there is a realistic or reasonable likelihood of prosecutorial conduct that would not have

occurred but for hostility or a punitive animus toward the defendant because he has exercised his specific legal rights." *Id.* The doctrine of vindictive prosecution "seeks to reduce or eliminate apprehension on the part of the accused" and "is designed, in part, 'to prevent chilling the exercise of rights by other defendants who must make their choices under similar circumstances in the future.'" *United States v. Jenkins,* 504 F.3d 694, 700 (9th Cir. 2007) (internal citations and alterations omitted). "When a defendant exercises constitutional or statutory rights in the course of criminal proceedings, the government may not punish him for such exercise without violating due process guaranteed by the federal Constitution." *United States v. Wall,* 37 F.3d 1443, 1448 (10th Cir. 1994) (citation omitted).

When government conduct such as this results in the denial of the right to counsel of choice, the Court should exercise its authority, as in *Stein*, to dismiss the indictment due to the Fifth and Sixth Amendment violations. The courts are not required to stand idly by in the face of such conduct. Federal courts retain supervisory powers to dismiss indictments in order "to remedy a constitutional or statutory violation; to protect judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; or to deter future illegal conduct." *United States v. Barrera-Moreno*, 951 F.2d 1089, 1091 (9th Cir. 1991); *see also United States v. W.R. Grace*, 526 F.3d 499, 511 n. 9 (9th Cir. 2008) (en banc) (noting that the court's supervisory powers are not necessarily limited to these three

scenarios).[16]

Accordingly, defendants respectfully request this Court to issue its order dismissing the indictment against them based on the principles set forth in *Stein* and this Court's supervisory powers.

**B.     Defendants Are Entitled To Disclosure Of All Communications Relating To The Government's Belated Decision To Seize Attorney Trust Accounts And Disclosure Of Any Other Cases In The District Of Arizona Where There Have Been Post-Indictment Pretrial Seizure Of Defendants' Attorneys' Fees.**

Given the chronology of events set forth above, defendants request this Court to order the government to disclose all communications and memoranda, including legal memoranda discussing the constitutional and legal issues surrounding the seizures of publishing assets and attorneys' fees post-indictment pretrial. These communications include communications between and among: prosecutors and law enforcement agents in the U.S. Attorney's Office for the District of Arizona; prosecutors and law enforcement agents in the Department of Justice, including prosecutors and law enforcement agents within the Money Laundering and Asset Recovery Section and the Forfeiture Unit; and any government prosecutors and law enforcement agents and counsel for cooperating defendants Backpage, Ferrer, and Hyer.

Defendants also request the United States to disclose all cases where the government has seized post-indictment, but prior to trial, attorneys' fees from defendants' counsel of

---

[16] In fact, a court in this district just recently exercised its supervisory powers to dismiss an indictment with prejudice due to a violation of the defendant's Sixth Amendment right to counsel. *United States v. Laurean-Lozoya*, 2018 WL 5924181 (D. Ariz., November 13, 2018).

choice. Defendants suspect this will not be a hard task as there is likely none, but in case we are mistaken in this belief, that fact needs to be placed in the record in the event there is later review of this issue.

Under Rule 16 of the Federal Rules of Criminal Procedure, the defendants are entitled to discovery of information relating to the government's purposes in seizing funds in attorney trust accounts. Minimally, these records should be produced and reviewed by the Court *in camera* and any records not disclosed kept under seal for potential appellate review.

## III.   If This Court Does Not Dismiss The Indictment Against These Defendants, Counsel For Defendants Request This Court To Issue Its Order Permitting Them To Withdraw.

The government's conduct in seizing attorney IOLTA trust accounts has rendered defendants Padilla and Vaught indigent and unable to continue to fund their counsel. The government's conduct constitutes changed circumstances in the case from the time of the indictment. The government's conduct is the direct cause of defendants being without funds to continue to retain counsel, thus necessitating counsel's withdrawal. This Court has previously indicated that issues relating to the release of seized assets to fund counsel should be raised in the Central District of California where the seizure warrants were issued.[17] As it is uncertain when those issues will be resolved, if the Court denies the present motion, undersigned counsel respectfully request this Court to issue its order allowing them to withdraw from the case and appointment of the Federal Public Defender or experienced

---

[17] *See* n. 13, *supra*.

17

counsel from the Criminal Justice Act panel for the District Court in Phoenix.[18]

## IV.    CONCLUSION

The government's interference with the defendants' counsel of choice has resulted in violations of the Fifth and Sixth Amendments to the United States Constitution and, accordingly, this matter must be dismissed. The defendants respectfully request that the Court order the government to provide the requested disclosure so the record relating to this motion is complete in the event there is appellate review.

Alternatively, if the Court denies this motion to dismiss, counsel respectfully request the Court to issue its order permitting them to withdraw from the case.

RESPECTFULLY SUBMITTED this 11th day of February, 2019.

PICCARRETA DAVIS KEENAN FIDEL PC

By:    /s/    Michael L. Piccarreta
Michael L. Piccarreta
Attorney for Defendant Andrew Padilla


KARP & WEISS, P.C.

By:    /s/    Stephen M. Weiss
Stephen M. Weiss
Attorney for Defendant Joye Vaught

---

[18] Defendants Padilla and Vaught will submit evidence of their indigency to the Court under seal, signed consents to withdraw as attorney of record, and applications and proposed orders in compliance with LRCrim 57.14 and LRCiv 83.3.

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of February, 2019, I electronically transmitted the foregoing to the Clerk of the Court via the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Reginald Jones:  Reginald.Jones@usdoj.gov
Peter S. Kozinets:  Peter.Kozinets@usdoj.gov
John Kucera:  John.Kucera@usdoj.gov
Margaret Perlmeter:  Margaret.Perlmeter@usdoj.gov
Kevin Rapp:  Kevin.Rapp@usdoj.gov
Andrew Stone:  Andrew.Stone@usdoj.gov
Thomas Bienert:  tbienert@bmkattorneys.com
Paul Cambria:  pcambira@lglaw.com
Robert Corn-Revere: bobcornrevere@dwt.com
Bruce Feder: bfeder@federlaw.com
James Grant:  jimgrant@dwt.com
Michael D. Kimerer,  mdk@kimerer.com
Gary Lincenberg: glincenberg@birdmarella.com