# EXHIBIT 1

## PICCARRETA DAVIS KEENAN FIDEL PC
LAWYERS

MICHAEL L. PICCARRETA  
JEFFERSON KEENAN  
LOUIS S. FIDEL  

BARRY M. DAVIS  
(1948-2016)  

May 7, 2018

2 EAST CONGRESS STREET, SUITE 1000  
TUCSON, ARIZONA 85701  
(520) 622-6900  
FAX (520) 622-0521  
WWW.PD-LAW.COM

Dominic Lanza, Esq.  
United States Attorney's Office  
Two Renaissance Square  
40 N. Central Avenue, Ste. 1200  
Phoenix, AZ 85004-4408

    Re:   Andrew Padilla

Dear Dom:

    I am enclosing a copy from my file of the Amended and Restated Limited Liability Company Agreement of Backpage.com LLC. This is the best copy I have but I'm sure there may be elsewhere signed versions or even possibly updated versions or additional agreements which I have not yet seen. The indemnification language begins on page 9. I have been advised, but have not confirmed through my research, that Delaware law fully permits indemnification in both civil and criminal proceedings. Also, your investigators likely have or can obtain access to similar indemnification agreements from Website Technologies or Posting Solutions.

    If you need further information or have any questions, please do not hesitate to contact me. I think it is in all of our best interests to protect and preserve Mr. Padilla's Fifth and Sixth Amendment rights and avoid being sidetracked on these constitutional issues.

                                 Sincerely,

                                 Michael L. Piccarreta

MLP:bp  
Enclosure

# AMENDED AND RESTATED
# LIMITED LIABILITY COMPANY AGREEMENT

## OF

## BACKPAGE.COM, LLC

(A Delaware Limited Liability Company)

THE MEMBERSHIP INTERESTS REFERENCED HEREIN HAVE BEEN ACQUIRED FOR INVESTMENT AND HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR ANY STATE SECURITIES LAWS. WITHOUT REGISTRATION, THESE SECURITIES MAY NOT BE SOLD, PLEDGED, HYPOTHECATED, OR OTHERWISE TRANSFERRED AT ANY TIME WHATSOEVER, EXCEPT ON DELIVERY TO THE COMPANY OF AN OPINION OF COUNSEL SATISFACTORY TO THE MEMBER OF THE COMPANY THAT REGISTRATION IS NOT REQUIRED FOR THE TRANSFER, OR THE SUBMISSION TO THE MEMBER OF THE COMPANY OF OTHER EVIDENCE SATISFACTORY TO THE MEMBER TO THE EFFECT THAT ANY TRANSFER WILL NOT BE IN VIOLATION OF THE SECURITIES ACT OF 1933, AS AMENDED, AND APPLICABLE STATE SECURITIES LAWS OR ANY RULE OR REGULATIONS PROMULGATED THEREUNDER. ADDITIONALLY, ANY SALE OR OTHER TRANSFER OF MEMBERSHIP INTERESTS IS SUBJECT TO CERTAIN RESTRICTIONS THAT ARE SET FORTH IN THIS AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT.

## Table of Contents

**Page**

ARTICLE I.  DEFINITIONS ............................................................................................. 1

    1.1  Definitions ............................................................................................ 1
    1.2  Other Definitional Provisions ............................................................... 2

ARTICLE II.  FORMATION ............................................................................................. 2

    2.1  Name and Formation ............................................................................ 2
    2.2  Principal Place of Business ................................................................... 2
    2.3  Registered Office and Agent ................................................................ 3
    2.4  Duration ................................................................................................ 3
    2.5  Purposes and Powers. ........................................................................... 3

ARTICLE III.  RIGHTS, DUTIES AND MEETING OF THE MEMBER ....................... 3

    3.1  Management .......................................................................................... 3
    3.2  General Limitations on the Powers of the Manager ............................. 4
    3.3  Duty of Care ......................................................................................... 6
    3.4  Resignation ........................................................................................... 6
    3.5  Removal ................................................................................................ 6
    3.6  Officers ................................................................................................. 6

ARTICLE IV.  CAPITALIZATION .................................................................................. 7

    4.1  Capital Contributions ........................................................................... 7
    4.2  Withdrawal or Reduction of Capital Contributions. ............................. 7
    4.3  Liability of the Member ....................................................................... 7

ARTICLE V.  DISTRIBUTIONS ...................................................................................... 7

    5.1  Distributions ......................................................................................... 7
    5.2  Limitation Upon Distribution ............................................................... 7

ARTICLE VI.  BOOKS AND ACCOUNTS ..................................................................... 7

    6.1  Records and Reports ............................................................................ 7
    6.2  Returns and Other Elections ................................................................. 8

ARTICLE VII.  DISSOLUTION AND TERMINATION ................................................. 8

    7.1  Dissolution ............................................................................................ 8
    7.2  Distribution of Assets Upon Dissolution ............................................. 8
    7.3  Certificate of Dissolution ..................................................................... 8

ARTICLE VIII. TRANSFERS OF MEMBERSHIP INTERESTS ...................................................9

ARTICLE IX.    Article IX INDEMNIFICATION............................................................................9
    9.1    Indemnification of Agents. ............................................................................9
    9.2    Agents' Insurance ........................................................................................11
    9.3    Other Insurance...........................................................................................11
    9.4    Amendment .................................................................................................11

ARTICLE X.    MISCELLANEOUS PROVISIONS .....................................................................12
    10.1    Application of Delaware Law......................................................................12
    10.2    Headings and Sections.................................................................................12
    10.3    Amendments................................................................................................12
    10.4    Number and Gender.....................................................................................12
    10.5    Binding Effect.............................................................................................12
    10.6    Counterparts................................................................................................12

Exhibit A

# AMENDED AND RESTATED

# LIMITED LIABILITY COMPANY AGREEMENT

# OF

# BACKPAGE.COM, LLC
## (A Delaware Limited Liability Company)

This AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT (this "**Agreement**") of Backpage.com, LLC, a Delaware limited liability company (the "**Company**"), dated as of January 17, 2013, is hereby duly adopted as the limited liability company agreement of Backpage.com, LLC, a Delaware limited liability company, by its member, IC Holdings, LLC, a Delaware limited liability company (the "**Member**"), and its manager, Carl Ferrer (the "**Manager**").

**WHEREAS**, the Company was formed pursuant to a Limited Liability Company Agreement dated as of November 10, 2004 (the "**Original Agreement**") and by filing the Company's Certificate of Formation in the Office of the Secretary of State of Delaware on November 10, 2004.

**NOW THEREFORE**, in consideration of the agreements and obligations set forth herein, the Member and Manager, intending to be legally bound, do now amend in its entirety and restate the Original Agreement and adopt this Agreement as amended and restated as the sole operating agreement to govern the affairs of the Company.

## ARTICLE I.

## DEFINITIONS

1.1     **Definitions**. The following terms used in this Agreement shall have the following meanings (unless otherwise expressly provided herein):

"*Act*" means the Delaware Limited Liability Company Act, as the same may be amended from time to time.

"*Agreement*" has the meaning attributed to it in the preamble.

"*Business Day*" means a day other than a Saturday, Sunday or other day which is a nationally recognized holiday.

"*Capital Contribution*" means any contribution to the capital of the Company in cash or property by the Member whenever made.

"*Certificate*" means the Certificate of Formation of the Company.

"*Code*" means the Internal Revenue Code of 1986, as amended.

"*Company*" has the meaning attributed to it in the preamble.

"*Covered Person*" means any of the following Persons: (i) any former, current or future Member, (ii) the Manager, or (iii) any former, current or future officer.

"*Fiscal Year*" means the Company's fiscal year, which shall be the calendar year.

"*Losses*" means all liabilities, judgments, obligations, losses, damages, taxes and interest penalties thereon (other than (i) income taxes due on income allocated to Membership Interests; and (ii) taxes based on fees, compensation or commissions received by a Covered Person in connection with the administration of the Company or the Company's property), claims, actions, suits or other proceedings (whether civil or criminal, pending or threatened, before any court or administrative or legislative body, and as the same are accrued, in which a Covered Person, may be or may have been involved as a party or otherwise or with which he or she may be or may have been threatened, while in office or thereafter), costs, expenses and disbursements (including, without limitation, legal and accounting fees and expenses) of any kind and nature whatsoever incurred in connection with the foregoing.

"*Manager*" has the meaning attributed to it in the Preamble.

"*Member*" means IC Holdings, LLC, a Delaware limited liability company.

"*Membership Interest*" means the entire equity interest (or "*limited liability company interest*" as that term is used in the Act) of the Member in the Company and all rights and liabilities associated therewith, which shall be expressed as a percentage on Exhibit A.

"*Person*" means a natural person or any corporation, limited liability company, partnership, limited partnership, joint venture, trust, estate, governmental entity or other entity.

"*Related Party*" means, with respect to a Covered Person, any shareholder, officer, director, employee, member, manager or partner of a Covered Person or any Person for which the Covered Person serves in any of such capacities, as the case may be.

1.2     **Other Definitional Provisions.** All terms used in this Agreement which are not defined in this Article I have the meanings contained elsewhere in this Agreement. Defined terms used herein in the singular shall import the plural and vice versa.

## ARTICLE II.

## FORMATION

2.1     **Name and Formation.** The name of the Company is "Backpage.com, LLC." The Certificate of the Company was filed on November 10, 2004. The Company was formed as a limited liability company upon the issuance of the Certificate of Formation to the Company on November 10, 2004, pursuant to the Act.

2.2     **Principal Place of Business.** The principal office and place of business of the Company are set forth on Exhibit A. The Company may locate its place of business and

principal office at any other place or places as the Manager may from time to time deem necessary or advisable.

2.3 **Registered Office and Agent.** The registered office and registered agent of the Company shall be the registered office and registered agent named in the Certificate and set forth on Exhibit A. The Company may change the registered office and registered agent as the Manager may from time to time deem necessary or advisable.

2.4 **Duration.** The period of duration of the Company is perpetual from the date its Certificate were filed with the Secretary of State of Delaware, unless the Company is earlier dissolved in accordance with either the provisions of this Agreement or the Act.

2.5 **Purposes and Powers.**

(a) The purpose for which the Company is organized is to transact any or all lawful business for which limited liability companies may be organized under the Act.

(b) The Company shall have any and all powers which are necessary or desirable to carry out the purposes and business of the Company, to the extent the same may be legally exercised by limited liability companies under the Act. The Company shall carry out the foregoing activities pursuant to the arrangements set forth in the Certificate of the Company and this Agreement.

## ARTICLE III.

## RIGHTS, DUTIES AND MEETING OF THE MEMBER

3.1 **Management.** The powers of the Company shall be exercised by or under the authority of, and the business and affairs of the Company shall be managed under, its Manager. Subject to the provisions of this Agreement, including without limitation Section 3.2 hereof, the Manager shall have the power on behalf and in the name of the Company to carry out and implement any and all of the purposes of the Company and to exercise any of the powers of the Company, including, without limitation, the power to:

(a) open, maintain and close bank accounts and draw checks or other orders for the payment of money;

(b) receive and dispose of and deal in all securities, checks, currency and other assets or liabilities of the Company except as otherwise set forth herein;

(c) hire employees (other than executive level officers) or retain, consultants, custodians, contractors and other agents, and in each case offer compensation;

(d) except as otherwise set forth herein, enter into, make and perform such contracts, agreements and other undertakings, and do any and all such other acts required of the Company with respect to the Company's interest in any corporation, partnership, limited partnership, trust, association or other entity or activity, including but not limited to entering into

agreements with respect to such interests, which agreements may contain such terms, conditions and provisions as the Manager shall approve;

(e) cause the Company to purchase or bear the cost of any insurance covering the potential liabilities of the Company, any Member or any agent or employee of the Company, as well as the potential liabilities of any person serving at the request of the Company as a director of a corporation in which the Company has an investment; and

(f) establish from time to time, as necessary, a capital reserve for future expenses of the Company; or

(g) remove any senior member of management as an employee or officer of the Company.

3.2 **General Limitations on the Powers of the Manager.** Notwithstanding anything to the contrary set for herein, the Manager shall not, without the consent of the Member, have the power to:

(a) Organize, create, dissolve or liquidate any subsidiary of the Company;

(b) enter into a merger or consolidation of the Company;

(c) approve annual operating, capital budgets, and other financials of the Company, or any amendments thereto and any significant expenditures (capital or operating) which are not part of the approved budgets. In the absence of an approved budget, the prior year's budget with a maximum increase of 5% in expense levels will serve as the Company's budget for the current fiscal year;

(d) select, appoint or replace the Company's attorneys or auditors or select investment bankers for the Company;

(e) draw checks or other orders for payment of money for amounts in excess of $25,000 individually;

(f) create any liens or encumbrances on any of the Company's assets or properties (except those created in the ordinary course of business);

(g) enter into any transaction with a Related Party;

(h) distribute cash or assets of the Company or make any dividend;

(i) amend or modify any organizational documents of the Company or this Agreement;

(j) sell, pledge, transfer or otherwise dispose of assets other than in the ordinary course of business;

(k) make changes in the capital structure of the Company;

(l)  cause an initial public offering of any securities of the Company;

(m)  issue additional equity securities or Membership Interests of the Company or options, warrants or other rights with respect thereto;

(n)  admit any new Member;

(o)  make any loan, guarantee or other extension of credit on behalf of any third party by the Company other than in the ordinary course of business;

(p)  enter into any hedging or derivative transaction;

(q)  file a petition seeking relief for the Company under any law for the relief of debtors;

(r)  commence any litigation or settle any claim or litigation;

(s)  enter into any agreement, contract, license, investment, joint venture or strategic alliance having a value or requiring a payment of greater than $50,000 in any one transaction or series of related transactions or which grants exclusive rights in any intellectual property of the Company;

(t)  incur indebtedness (excluding trade payables incurred in the ordinary course of business, but including capital leases and material operating leases) in excess of the aggregate indebtedness (exclusive of interest) of the Company as of the date hereof, or refinancings, modifications or prepayments thereof and granting of liens in connection therewith;

(u)  cause a change in the Company's accounting policies (other than as required by GAAP) or make a tax election that would reasonably be expected to materially and adversely affect a Member;

(v)  cause the Company to enter into a new line of business or discontinue the current business;

(w)  establish, modify or amend any employee benefit plans, agreements or arrangements;

(x)  enter into, modify or amend any employment related agreements with members of management;

(y)  establish, modify or amend any equity based compensation plan (and the granting of any benefits or rights thereunder);

(z)  establish, modify or amend (whether to reduce or increase) any compensation for management, including base salary and any bonus arrangements;

(aa)  appoint, hire or fire any senior member of management (e.g., CEO, President, COO, CTO or CFO);

(bb) relocate the offices or the principal working location of any member of management;

(cc) dissolve the Company; or

(dd) knowingly perform or consent to the performance of any act which would subject any Member of the Company to liability.

Subject to the foregoing, the Manager may appoint, employ or otherwise contract with any Person for the transaction of business of the Company or the performance of services for or on behalf of the Company, and the Manager may delegate to any such Person such rights, powers and authority to act on behalf of the Company or to control the business and affairs of the Company, as the Manager shall possess. At any time when the Manager shall have made such delegation, each of such Person and the Manager may exercise such delegated rights, powers or authority concurrently without the consent of the other.

3.3   **Duty of Care.** The Manager shall exercise his best judgment in conducting the Company's operations and in performing his other duties hereunder. The Manager shall not incur any liability to the Company, any Member or any other Person for any loss suffered by the Company or such other Member or Person which arises out of any action or omission of the Manager; provided, however, that (i) the Manager acted in good faith and in a manner such Person reasonably believed to be in, or not opposed to, the best interests of the Company and, with respect to any criminal action or proceeding, had no reasonable cause to believe such Person's conduct was unlawful, and (ii) such course of conduct did not constitute gross negligence or willful misconduct of the Manager. The Manager shall not be liable for the negligence, whether of omission or commission, dishonesty or bad faith of any employee, broker or other agent of the Company selected by the Manager with reasonable care. The Manager shall be fully protected and justified with respect to any action or omission taken or suffered by any of them in good faith if such action or omission is taken or suffered in reliance upon and in accordance with the opinion or advice as to matters of law of legal counsel, or as to matters of accounting of accountants, selected by any of them with reasonable care. In addition, the Manager shall be entitled to indemnification by the Company to the extent provided in Article IX hereof.

3.4   **Resignation.** The Manager may resign at any time by giving at least sixty (60) days written notice to the Company. Unless otherwise specified in such notice, the acceptance of the resignation shall not be necessary to make it effective.

3.5   **Removal.** The Manager may be removed or replaced at any time with or without cause by the Member.

3.6   **Officers.** Upon consent of the Member, the Manager may, from time to time, designate one or more persons to be officers of the Company. Any officers so designated shall have such authority and perform such duties as the Manager may, from time to time, delegate to them. Each officer shall hold office until such person's successor shall be duly designated and shall qualify or until such person's death or until such person shall resign or shall have been removed in the manner hereinafter provided. Any number of offices may be held by the same

-6-

person. The salaries or other compensation, if any, of the officers and agents of the Company shall be fixed from time to time by the Manager, upon the consent of the Member. Any officer may be removed as such, either with or without cause, jointly by the Manager and Member whenever in its judgment the best interests of the Company will be served thereby. Any vacancy occurring in any office of the Company may be filled by the Manager upon the consent of the Member.

## ARTICLE IV.

## CAPITALIZATION

4.1 **Capital Contributions.**

(a) If at any time the Manager determines that the Company has insufficient funds to carry out the purposes of the Company, the Manager may request that the Member make additional contributions to the capital of the Company and the Member shall determine whether to do so in its sole discretion. Such cash or property shall be the Capital Contributions of the Member.

(b) The Member shall not be paid interest on any Capital Contribution.

4.2 **Withdrawal or Reduction of Capital Contributions.** The Member shall not receive out of the Company's property any part of its Capital Contribution until all liabilities of the Company have been paid or there remains property of the Company sufficient to pay such liabilities.

4.3 **Liability of the Member.** The Member shall not be liable for the debts, liabilities or obligations of the Company beyond it Capital Contributions. The Member shall not be required to contribute to the capital of, or to loan any funds to, the Company.

## ARTICLE V.

## DISTRIBUTIONS

5.1 **Distributions.** Subject to Section 5.2, the Company shall make all distributions at such times and in such amounts as determined solely by the Member.

5.2 **Limitation Upon Distribution.** No distribution shall be declared and paid unless, if after the distribution is made, the value of assets of the Company would exceed the liabilities of the Company, except liabilities to the Member on account of its Capital Contributions.

## ARTICLE VI.

## BOOKS AND ACCOUNTS

6.1 **Records and Reports.** At the expense of the Company, the Company shall maintain records and accounts of all operations and expenditures.

6.2 **Returns and Other Elections**. The Member shall prepare and timely file all tax returns required to be filed by the Company pursuant to the Code and all other tax returns deemed necessary and required in each jurisdiction in which the Company does business. The Manager shall furnish the Member with all information necessary to prepare and file such tax returns after the end of each Fiscal Year of the Company. All elections permitted to be made by the Company under federal or state laws shall be made by the Member in its sole discretion.

## ARTICLE VII.

## DISSOLUTION AND TERMINATION

7.1 **Dissolution**.

(a) The Company shall be dissolved upon the first of the following to occur:

(i) When the period fixed for the duration of the Company, if any, shall expire;

(ii) Upon the election to dissolve the Company by the Member; or

(iii) The entry of a decree of judicial dissolution under Section 18-802 of the Act.

(b) Upon dissolution of the Company, the business and affairs of the Company shall terminate, and the assets of the Company shall be liquidated under this Article VII.

(c) Dissolution of the Company shall be effective as of the day on which the event occurs giving rise to the dissolution, but the Company shall not terminate until there has been a winding up of the Company's business and affairs, and the assets of the Company have been distributed as provided in Section 7.2.

(d) Upon dissolution of the Company, the Manager shall cause any part or all of the assets of the Company to be sold in such manner as the Member shall determine in an effort to obtain the best prices for such assets; *provided, however,* that the Member shall, in the alternative, be entitled to instruct the Manager to distribute assets of the Company in kind to the Member to the extent practicable.

7.2 **Distribution of Assets Upon Dissolution**. In settling accounts after dissolution, the assets of the Company shall be paid in the following order:

(a) First, to creditors, in the order of priority as provided by applicable law, except those to the Member on account of its Capital Contributions; and

(b) Second, any remainder shall be distributed to the Member.

7.3 **Certificate of Dissolution**. When all liabilities and obligations of the Company have been paid or discharged, or adequate provision has been made therefore, and all of the

remaining property and assets of the Company have been distributed to the Member according to its respective rights and interests, the Certificate of Dissolution shall be executed on behalf of the Company by the Manager and shall be filed with the Secretary of State of Delaware, and the Manager shall or shall cause the Member to execute, acknowledge and file any and all other instruments necessary or appropriate to reflect the dissolution and termination of the Company.

## ARTICLE VIII.

## TRANSFERS OF MEMBERSHIP INTERESTS

The Member, may sell, assign or otherwise transfer all or any portion of the Member's Membership Interest at any time to any Person.

## ARTICLE IX.

## INDEMNIFICATION

9.1     **Indemnification of Agents.**

(a)     Subject to the provisions of this Article IX, the Company shall defend and indemnify any Covered Person or Related Party from and against any and all Losses asserted against, imposed on or incurred by such Covered Person or Related Party at any time as a result of such Covered Person's capacity or former capacity as a member, director or officer or service at the request of the Company as a member, manager, partner, director, officer or employee of another Person (all such Persons being referred to in this Article IX as an "*agent*"), including, without limitation, in connection with the actions or inactions of such Person hereunder, to the fullest extent permitted by applicable law in effect on the date hereof and to such greater extent as applicable law may hereafter from time to time permit; *provided, however*, that no such indemnification shall be provided for any agent regarding any matter as to which it shall be finally determined that such agent (or such agent's Related Party): (i) breached its duty of loyalty to the Company; (ii) did not act in good faith and in the reasonable belief that its action was in the best interests of the Company or was involved in fraud, intentional misconduct or a knowing violation of law; or (iii) derived any improper personal benefit.

(b)     Promptly after receipt by an agent of notice of any Losses to which the indemnification obligations set forth in Section 9.1(a) would apply, the agent shall give notice thereof in writing to the Company, but the omission to so notify the Company promptly will not relieve the Company from any liability except to the extent that the Company shall have been prejudiced as a result of the failure or delay in giving such notice. Such notice shall state in reasonable detail the information then available regarding the amount and nature of such Losses.

(c)     If within twenty (20) days after receiving such notice the Company gives written notice to the agent stating that it intends to defend against such Losses at its own cost and expense, then counsel for the defense shall be selected by the Company (subject to the consent of the agent, which consent shall not be unreasonably withheld), and the agent shall not be required to make any payment with respect to such Losses as long as the Company is conducting a good faith and diligent defense at its own expense; *provided, however,* that the assumption of defense

of any such matters by the Company shall relate solely to the Losses that are subject or potentially subject to indemnification. The Company shall have the right, with the consent of the agent, which consent shall not be unreasonably withheld, to settle all indemnifiable matters related to claims by third parties which are susceptible to being settled, so long as its obligation to indemnify the agent therefore will be fully satisfied. The Company shall keep the agent apprised of the status of the Losses, shall furnish the agent with all documents and information that the agent shall reasonably request and shall consult with the agent prior to acting on major matters, including settlement discussions. Notwithstanding anything herein stated to the contrary, the agent shall at all times have the right to participate fully in such defense at its own expense, directly or through counsel; *provided, however*, if the named parties to any action or proceeding include both the Company and the agent and representation of both parties by the same counsel would be inappropriate under applicable standards of professional conduct, the expense of separate counsel for the agent shall be paid by the Company. If no such notice of intent to dispute and defend is given by the Company, or if such diligent good faith defense is not being or ceases to be conducted, the agent shall, at the expense of the Company, undertake the defense of (with counsel selected by the agent), and shall have the right to compromise or settle (exercising reasonable business judgment), such Losses with the consent of the Company, which consent shall not be unreasonably withheld. If such Losses are such that by their nature they cannot be defended solely by the Company, then the agent shall make available all information and assistance that the Company may reasonably request and shall cooperate with the Company in such defense.

(d) The Company shall be obligated to pay indemnification applied for by any agent within forty-five (45) days after the application, unless there is an adverse determination in accordance with Section 9.1(a).

(e) Notwithstanding any contrary provisions of this Article IX, if any agent has been wholly successful on the merits in the defense of any action, suit or proceeding in which he was involved by reason of his position with the Company or as a result of serving in such capacity (including termination of investigative or other proceedings without a finding of fault on the part of such agent), such agent shall be indemnified by the Company against all Losses incurred by such agent in connection therewith.

(f) Except as limited by law, Losses incurred by an agent in defending any action, suit or proceeding, including a proceeding by or in the right of the Company, shall be paid by the Company to such agent in advance of final disposition of the proceeding upon receipt of its written undertaking to repay such amount if such agent is ultimately determined to be ineligible for indemnification pursuant to this Article IX, which undertaking shall be an unlimited general obligation but need not be secured and may be accepted without regard to the financial ability of such agent to make repayment; *provided, however*, that no such advance payment of Losses shall be made to an agent (i) who commences any action, suit or proceeding as a plaintiff unless such advance is specifically approved by the Manager, or (ii) who is a party to an action, suit or proceeding brought by the Company and approved by the Manager which alleges willful misappropriation of Company assets by such agent, disclosure of confidential information in violation of such agent's fiduciary or contractual obligations to the Company, or any other willful and deliberate breach in bad faith of such agent's duty to the Company, Manager or Member.

(g) The Company's obligation to provide indemnification under this Article IX shall be offset to the extent the indemnified party is indemnified by any other source including, but not limited to, applicable insurance coverage under a policy maintained by the Company, the indemnified party or any other Person.

(h) The provisions of this Article IX shall be deemed to be a contract between the Company and each agent of the Company who serves in such capacity at any time while this Article IX is in effect, and any repeal or modification thereof shall not affect any rights or obligations then existing with respect to any state of facts then or theretofore existing or any action, suit or proceeding theretofore or thereafter brought based in whole or in part upon any such state of facts.

(i) The indemnification and advancement of expenses provided for in this Article IX shall (i) not be deemed exclusive of any other rights to which those indemnified may be entitled under any agreement or vote of the member, both as to action in their official capacities and as to action in another capacity while holding such office; (ii) continue as to a Person who has ceased to be an agent; (iii) inure to the benefit of the heirs, executors and administrators of such a Person; and (iv) shall survive termination of this Agreement.

(j) The Company shall be authorized, with the prior approval of the Manager, to enter into indemnity agreements from time to time with any Person entitled to be indemnified by the Company hereunder, upon such terms and conditions as the Manager deems appropriate in its business judgment.

(k) If the Company sponsors or undertakes any responsibility as a fiduciary with respect to an employee benefit plan, then for purposes of this Article IX (i) "agent" shall be deemed to include the officer or employee of the Company who serves at its request in any capacity with respect to said plan, (ii) the officer or employee shall not be deemed to have failed to act in good faith or in the reasonable belief that its action was in the best interests of the Company if such officer or employee acted in good faith and in the reasonable belief that its action was in the best interests of the participants or beneficiaries of such plan and (iii) "Losses" shall be deemed to include any taxes or penalties imposed upon such agent with respect to said plan under applicable law.

9.2 **Agents' Insurance**. The Company shall have the power, but not the obligation, to purchase and maintain insurance on behalf of any Person who is or was an agent of the Company against any liability asserted against such Person and incurred by such Person in any such capacity, or arising out of such Person's status as an agent, whether or not the Company would have the power to indemnify such Person against such liability under the provisions of Section 9.1 or under applicable law.

9.3 **Other Insurance**. The Company shall also have the power to purchase and maintain insurance of other types if and in the amount that the Manager and Member mutually deem appropriate.

9.4 **Amendment**. The provisions of this Article IX may be amended or repealed in accordance with Section 10.3; *provided, however*, no amendment or repeal of such provisions

-11-

that adversely affects the rights of the Member under this Article IX with respect to its acts or omissions at any time prior to such amendment or repeal shall apply to the Member without its prior consent.

## ARTICLE X.

## MISCELLANEOUS PROVISIONS

10.1 **Application of Delaware Law.** This Agreement and the application or interpretation hereof, shall be governed exclusively by the laws of the State of Delaware, and specifically the Act.

10.2 **Headings and Sections.** The headings in this Agreement are inserted for convenience only and are in no way intended to describe, interpret, define, or limit the scope, extent or intent of this Agreement or any provision hereof. Unless the context requires otherwise, all references in this Agreement to Sections or Articles shall be deemed to mean and refer to Sections or Articles of this Agreement.

10.3 **Amendments.** Except as otherwise expressly set forth in this Agreement, this Agreement may be amended, supplemented or restated only upon the written consent of the Member. Upon obtaining the approval of any amendment to the Certificate, the Manager shall cause Certificate of Amendment in accordance with the Act to be prepared, and such Certificate of Amendment shall be executed by the Manager and shall be filed in accordance with the Act.

10.4 **Number and Gender.** Where the context so indicates, the masculine shall include the feminine, the neuter shall include the masculine and feminine, the singular shall include the plural and any reference to a "person" shall mean a natural person or a corporation, limited liability company, association, partnership, joint venture, estate, trust or any other entity.

10.5 **Binding Effect.** Except as herein otherwise provided to the contrary, this Agreement shall be binding upon and inure to the benefit of the Manager, Member, its distributees, heirs, legal representatives, executors, administrators, successors and assigns.

10.6 **Counterparts.** This Agreement may be executed in multiple counterparts, each of which shall be deemed to be an original and shall be binding upon the Member and Manager who executed the same, but all of such counterparts shall constitute the same Agreement.

*[Remainder of Page Intentionally Left Blank.]*

*Signature Pages To Follow.*

10972179v.4

The undersigned, being the sole Member of the Company and the Manager of the Company, do hereby ratify, confirm and approve the adoption of this Agreement as the limited liability company agreement of the Company, and do hereby assume and agree to be bound by and to perform all of the terms and provisions set forth in this Agreement as of the date first set forth above.

**MEMBER:**

**IC HOLDINGS, LLC,**
a Delaware limited liability company

By: _____
Name:
Title:   Manager

**MANAGER:**

_____
Carl Ferrer

[Signature Page to Amended and Restated Operating Agreement of Backpage.com, LLC]

10972179v.4

# EXHIBIT A

| 1. | Name of Company: | Backpage.com, LLC |
|---|---|---|
| 2. | Principal Office: | |
| 3. | | |
| 4. | | |
| 5. | Registered Agent & Registered Office | Corporation Service Company<br>2711 Centerville Road, Suite 400<br>Wilmington, Delaware 19808 |
| 6. | Member: | |
| | a. Name of Member: | IC Holdings, LLC |
| | b. Percentage of Ownership: | 100% |

10972179v.4