MICHAEL BAILEY
United States Attorney
District of Arizona

KEVIN M. RAPP (Ariz. Bar No. 014249, kevin.rapp@usdoj.gov)
MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
PETER S. KOZINETS (Ariz. Bar No. 019856, peter.kozinets@usdoj.gov)
ANDREW C. STONE (Ariz. Bar No. 026543, andrew.stone@usdoj.gov)
JOHN J. KUCERA (Cal. Bar No. 274184, john.kucera@usdoj.gov)
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

BRIAN BENCZKOWSKI
Assistant Attorney General
Criminal Division, U.S. Department of Justice

REGINALD E. JONES (Miss. Bar No. 102806, reginald.jones4@usdoj.gov)
Senior Trial Attorney, U.S. Department of Justice
Child Exploitation and Obscenity Section
950 Pennsylvania Ave N.W., Room 2116
Washington, D.C. 20530
Telephone (202) 616-2807
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, <br><br> Plaintiff, <br><br> v. <br><br> 6. Andrew Padilla, <br><br> Defendant. | CR-18-422-PHX-SMB <br><br> **UNITED STATES' RESPONSE TO MOTION TO CONTINUE TRIAL AND DATES FOR COMPLIANCE PER SCHEDULING ORDER (Doc. 628)** |

## INTRODUCTION AND SUMMARY OF ARGUMENT

Defendant Andrew Padilla's motion to continue trial and dates for compliance per scheduling order is unavailing and should be denied for several reasons. *First*, defense counsel's recitation of the amount of discovery that he is required to review in preparation for a January 2020 trial date is not fully accurate. A considerable amount of discovery relevant to Padilla has been available since January 2017 and is detailed in the United States

Senate Report[1] and the superseding indictment, which clearly identifies the United States' theory in this case and some of the most important pieces of the government's evidence. (*See* CR 230.) In addition, a large volume (5.9 million pages) of the discovery (primarily the discovery known as the "Co-Star" material) has little relevance to Padilla as the documents involve Backpage's international markets. Moreover, the United disclosed to Padilla nearly a year ago the approximately 100 pages of Co-Star related material it might utilize at trial.

*Second*, newly appointed counsel has eight months to prepare for trial, is an experienced criminal defense attorney, and has the assistance and resources (financial and otherwise) of the attorneys representing the co-defendants. As the Court is aware, Padilla's previous counsel and counsel representing the other defendants have already filed numerous notices, motions, responses and replies that arguably support Padilla.

*Third*, Padilla's role in the offense was limited to his position as the head of Backpage's moderation department. In other words, he was not present during the frequent management meetings where business practices (*e.g.*, The Erotic Review, Rubmaps and other reciprocal link relationships, etc.) were discussed, he was not endorsed on numerous emails that involved public relation strategies, did not attend meetings with various organizations (*i.e.* NCMEC, Auburn Theological Seminary, Polaris, etc.) and law enforcement agencies (Washington State Attorney General's Office, Cook County Sheriff's Office, etc.), and did not have a percentage ownership in the company. These factors, among others, clearly distinguish him from the four primary defendants. Additionally and importantly, Padilla is not charged with money laundering (Counts 52-100). Simply stated, the evidence (and corresponding discovery) that applies to Padilla is not as expansive as the relevant discovery that applies to Defendants Lacey, Larkin, Spear and Brunst.

---

[1] https://www.hsgac.senate.gov/imo/media/doc/Backpage%20Report%202017.01.10%20FINAL.pdf

*Fourth*, the United States has spent considerable time reviewing the evidence with his previous attorney. For example, Padilla's previous counsel was provided (four months *prior* to indictment) "hot" documents that implicate Padilla in the charges related to violations of the Travel Act. Moreover, last month, the United States provided Padilla's defense counsel with hot documents – documents specifically related to the allegations contained in the superseding indictment to all defendants. Additionally, in the government's May 20, 2019 letter to counsel Eisenberg, the United States labeled each "hot doc" that supports the allegations contained in the superseding indictment to Padilla to allow counsel to cross-reference these "hot docs" with the information contained in the corresponding paragraphs of the superseding indictment. (*See* Exhibit A.)

*Fifth and last*, the victims have a right conferred by statute to proceedings free from unreasonable delay and oppose a continuance.

## **ARGUMENT**

Defendant's argument that the relevant discovery in this case amounts to over 10 million pages is not entirely accurate. (Mot. at 2.) As noted in previous status memoranda filed by the United States, the server data involved in this case contains millions of postings of blatant or thinly-veiled solicitations for prostitution services in the United States market (involving nearly 394 cities in the United States) and in 94 countries worldwide. Of the approximately 10 million pages of documents produced to date by the United States to the defense, more than 2.1 million pages consist of documents Backpage had previously provided the U.S. Senate Permanent Subcommittee on Investigations ("PSI") in the fall of 2016, and documents Backpage had previously produced to the United States in September 2017 as a result of the district court's April 7, 2018 order and the Ninth Circuit's mandate compelling Backpage to comply with Grand Jury Subpoena No. 16-04-108. (*See* CR 444.) Simply put, many of the documents are Backpage documents that the United States is simply reproducing back to Defendants pursuant to its discovery obligations.

In addition, the 2.1 million documents provided to the PSI were distilled into a comprehensive 50-page Senate Report (publicly available since January 2017) that

references Padilla nearly sixty times, and that was accompanied by an 840-page appendix containing dozens of relevant emails. Padilla should already be very familiar with these emails as he either authored or was endorsed on them. In sum, the Senate Report provides an in-depth analysis of Padilla's role as the head of Backpage's moderation department.

Lastly, Padilla is also familiar with various victims referenced in the indictment because he was subpoenaed for depositions in certain victims' civil cases prior to the instant federal prosecution. In addition, the 100-page superseding indictment references many of the PSI and grand jury documents pertaining to Padilla. In sum, the superseding indictment and PSI provide a detailed explanation of Padilla's role and outline evidence the United States will rely upon at trial.

Moreover, a large volume of discovery is not even relevant to Padilla. More than 5.9 million pages of documents disclosed to Padilla originated from a source entitled "Co-Star materials." The vast majority of that data involves postings in foreign markets (where no moderation was implemented) and is of marginal or no relevance to the crimes committed by Padilla in the United States.

Furthermore, for an array of reasons, Padilla is at a substantial advantage in being prepared for a January 2020 trial. *First*, the United States' pulled the discovery pertinent to Padilla into a single, comprehensive, well-organized, and easy-to-understand package that it shared with his former counsel in late 2017, months before indictment. *Second*, the superseding indictment is comprehensive and identifies numerous emails Padilla authored or received; in addition, the Senate Report provides a detailed explanation of Padilla's role as the head of Backpage's moderation department. *Third*, Padilla's counsel has been provided both a preliminary witness and exhibit list *ten* months before trial. Typically, in this District, the practice is to provide these lists just weeks before trial. *Fourth*, Padilla not only had the witnesses identified well in advance of trial but the United States has voluntarily disclosed any available Jencks Act statements for those witnesses. As the Court is aware, the United States is not required to disclose these statements until *after* a witness testifies. 18 U.S.C. § 3500. It is the general practice that the United States provide these

statements sometime shortly prior to trial (in most cases weeks or days).  *Fifth*, the United States also intends to identify and segregate each and every trial exhibit intended for use in its case-in-chief and provide those exhibits to the defense in advance of trial in digital format.  Finally, Padilla is out of custody and is able to effectively assist his counsel in reviewing discovery unencumbered by the restrictions of pretrial detention.

There is more. As noted in previous pleadings, the prosecution team met with Padilla's prior counsel (Michael Piccarreta) four months *prior* to indictment to review "hot" documents and a road map of the prosecution theory of Padilla's role in the criminal enterprise. (*See* CR 444 at 4.) The United States is willing to meet with Padilla's new counsel and provide the same detailed overview of government's case against his client. The United States has also requested counsel contact it with any questions regarding the case.

Padilla also benefits from the substantial motion practice that ensued before new counsel was appointed.  Counsel representing the other defendants (Lacey, Larkin, and Brunst have several attorneys) have filed motions for discovery (*e.g.*, motion for *Brady* material), a motion to dismiss the indictment based on possible pretrial defenses, and other motions. (*See*, *i.e.*, CR 399, 456, 474, 477, 507, 539, 544, 561.)  And, the defense has collectively noticed experts and even supplemented that notice. (*See* CR 500, 538.) Notably, Padilla's counsel does not suggest other motions he would file on behalf of Padilla that have not already been filed by his previous counsel or co-defendants. Lastly, Padilla's counsel joined the Backpage defendants' 55-page motion to dismiss indictment (*See* CR 615.)

*Fifth*, Padilla's argument that his appointment less than ten months prior to trial would deny Padilla effective assistant of trial to which he is entitled  is misplaced. (Mot. at 4.) In *United States v. Cronic*, 466 U.S. 648, 659, (1984) , the Supreme Court reversed the lower court and found that 25 days was a sufficient amount of time for preparation for a complex case, where the attorney was young, inexperienced in criminal law (he was a real estate attorney), and it was his first trial.  The Court further found that neither the period of

time that the United States spent investigating the case, nor the number of documents that its agents reviewed during that investigation, were necessarily relevant to the question whether a competent lawyer could prepare to defend the case in 25 days. *Id.*

Here, unlike *Cronic*, counsel has far more than 25 days to prepare for trial. Again, in addition to the advantages of earlier disclosure of evidence, witness and exhibit lists, and early disclosure of Jencks Act statements, etc., Padilla's counsel has eight months from the date he was appointed to prepare for trial.

Padilla's new counsel has been practicing law for nearly forty years. (http://davideisenberglaw.com/attorney/.) He is a former federal prosecutor in Phoenix, New York and Washington D.C. (*Id.*) By his own admission he has "a unique expertise in the investigation of defenses and the trial of [like the instant case] complex white collar cases." (*Id.*) In sum, Padilla's new attorney is a highly regarded attorney with a background relevant to defending this complex case. In addition, Padilla had the advantage of a couple of years of representation by another highly-experienced attorney (Mr. Piccarreta represented him at least since March 2017) before the case was assigned to current counsel.[2]

In short, Padilla has an experienced attorney with expertise in complex cases, who will not need to litigate the case by himself. Indeed, Padilla's new attorney will have the benefit of numerous other attorneys urging defenses that would apply to Padilla. Further discovery relevant to Padilla has been in his possession for many months.

Padilla's requested continuance should be denied for a further reason: The public and the victims have a right conferred by statute to "proceedings free from unreasonable delay." 18 U.S.C. § 3771(a)(7) (the "Crime Victims' Rights Act"); *see also* 18 U.S.C. § 3161(h)(7)(A). The Superseding Indictment contains 17 select victim summaries. (CR 230, ¶¶ 160-176.) Of these victims, at least five were juveniles when they were trafficked on Backpage. (CR 230, ¶¶ 163, 164, 167, 169, 172.) Four of the victims were murdered or

---

[2] https://pd-law.com/

- 6 -

killed as a result of being trafficked on Backpage, and their surviving family members or lawful representatives stand in their shoes for purposes of the Crime Victims' Rights Act. 18 U.S.C. § 3771(e)(2)(B); (CR 230, ¶¶ 165, 173, 174, 175.) The victims' and public's statutory right to a speedy trial—and their need for an expeditious resolution of this prosecution—strongly militates against further delay.

## CONCLUSION

For these reasons, the United States opposes Padilla's motion for a continuance.

Respectfully submitted this 17th day of June, 2019.

MICHAEL BAILEY
United States Attorney
District of Arizona

*s/ Kevin M. Rapp*
KEVIN M. RAPP
MARGARET PERLMETER
PETER S. KOZINETS
ANDREW C. STONE
JOHN J. KUCERA
Assistant U.S. Attorneys

BRIAN BENCZKOWSKI
Assistant Attorney General
Criminal Division, U.S. Department of Justice

REGINALD E. JONES
Senior Trial Attorney
U.S. Department of Justice, Criminal Division
Child Exploitation and Obscenity Section

**Certificate of Service**

I hereby certify that on this date, June 17, 2019, I transmitted the foregoing document for filing to the Clerk of the United States District Court and sent a copy via electronic mail to: David Eisenberg, Esq.

*s/ Angela Schuetta*
Angela Schuetta
U.S. Attorney's Office